OVERTON *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—NOTICE OF ALLEGED DEFECT IN PUBLIC
   PLACE—LOCATION.
   A notice to a city of injury sustained by plaintiff because of an
   alleged defect in a public place must contain a description
   of the place of the accident so definite as to enable the in-
   terested parties to identify it from the notice itself in order
   to be a sufficient notice (CL 1948, § 242.8).

2. SAME—NOTICE OF DEFECT—PAROL EVIDENCE.
   A reasonable notice of defect in a public place has not been
   given the city when parol evidence is required to determine
   both the place and nature of the defect (CL 1948, § 242.8).

3. SAME—STATUTES—NOTICE OF DEFECT.
   The intent of the statute requiring that a notice be given city,
   which would "specify the location and nature of said defect, the
   injury sustained" by plaintiff who seeks recovery from city
   of damages for injuries sustained is to give the defendants
   in such cases some protection against unjust raids upon their
   treasuries by requiring a claimant to give definite information
   at a time when the matter is fresh, conditions unchanged and
   witnesses thereto and to the accident within reach and there
   must be reasonably substantial compliance with the statutory
   requirements (CL 1948, § 242.8).

4. SAME—NOTICE OF DEFECT—PAROL EVIDENCE.
   A plaintiff's notice to city of claimed defect in street which
   is alleged to have caused her injury that failed to disclose
   the location of the place and nature of the defect in the
   street and which needed parol evidence to determine the place
   and nature of the defect did not constitute reasonable notice
   to the city (CL 1948, § 242.8).

5. SAME—DEFECTIVE SIDEWALK—DURATION OF DEFECT—EVIDENCE.
   It was error to deny defendant city's motion for a directed

REFERENCES FOR POINTS IN HEADNOTES
[1-6] 38 Am Jur, Municipal Corporations §§ 673-701.

verdict in action against it by person who claimed to have been injured by reason of a defect in the sidewalk, where there is no testimony that city had had notice of the claimed defect prior to the injury or that the defect had existed for 30 days prior to that date (CL 1948, § 242.6).

6. SAME—DEFECTIVE SIDEWALK—BURDEN OF PROOF.

The burden of establishing fact that claimed defect in city sidewalk had been of long standing and was of such a character as would naturally arrest the attention of passers-by is upon the party who seeks to recover damages from the city by reason of the existence of the defect (CL 1948, § 242.6).

Appeal from Wayne; Weideman (Carl M.), J. Submitted April 8, 1954. (Docket No. 36, Calendar No. 46,014.) Decided June 7, 1954.

Case by Sylvia Overton against the City of Detroit, a municipal corporation, for damages for injury sustained in fall on sidewalk. Judgment for plaintiff. Defendant appeals. Reversed and remanded for entry of judgment for defendant.

*Joseph Marvaso,* for plaintiff.

*Paul T. Dwyer,* Corporation Counsel, and *Leo E. La Joie,* Assistant Corporation Counsel, for defendant.

KELLY, J. On March 31, 1949, appellee fractured her leg about 3 inches above the ankle as she stepped from the street to the sidewalk near the corner of Bates and Larned streets in the city of Detroit. She filed her claim with the city on the following day, establishing the location "at sidewalk front of 28 E. Larned, corner of Bates."

Almost 2 years later, on February 13, 1951, plaintiff filed her declaration, establishing the place of the injury as: "Immediately in front of the building located on the southwest corner of East Larned and

Bates street, in the city of Detroit, said building being commonly known as 28 East Larned street, Detroit, Michigan." She described the defect as follows: "Said sidewalk was broken near the curb of Bates street and a depression existed thereon, especially within the center of an uncovered metal pipe approximately 3 inches in diameter."

The case was tried before a jury. Plaintiff was the only witness who testified as to how and where the accident occurred. Defendant introduced testimony of 3 witnesses to refute her testimony, namely: John Campbell, an employee at the store near where the accident occurred; Thomas Heins, a police officer who drove appellee to the hospital; and Elmer Leydet, a police sergeant assigned to the corporation counsel's office to investigate claims.

Campbell testified: "I saw a colored woman sitting on the steps. I asked her what was wrong. She told me she slipped on the glass prisms and fell. I hailed a police car and asked the officers if they would take care of her. * * * I did not see Mrs. Overton fall. I was only concerned with getting her help. I did not assume she slipped on the glass prisms. She said she slipped on the prisms. It had been raining but I don't recall whether it was raining at the time or not."

Heins testified: "I recall picking up Mrs. Overton and taking her to the hospital. I have since seen the report I made out at the time. I recall just what happened. We took her to the hospital. She said she slipped on the glass bricks."

Leydet testified that he interviewed appellee at her home 5 days after the accident, and introduced in evidence her signed statement as follows:

"Date—April 4, 1949

"Location—38 E. Larned

"Statement of Witness—Sylvia Overton.

"On March 31, 1949 at or about 9 a.m. I had just got off the streetcar at Bates and Larned, and crossed Bates to the west side of Bates. It was raining at the time, and I was going to step up into the doorway to get out of the rain. I slipped on the glass lights in the sidewalk and fell to the walk. I couldn't get up, so I crawled into the doorway and sit on the steps. The police came and took me to Receiving Hospital. They took an X-ray, and about 5 hours later the doctor came to put my left leg in a cast. There were a lot of people passing, but I didn't get their names. I work as a maid by the day. I make $6.50 per day.

"I was wearing oxfords with Cuban heels.

"The man John Campbell who works at the hardware company, called the police.

"I don't know what the amount of my claim will be.

"I just fell so quick I just don't know what to say.

"I did not have rubbers on. When I fell I just doubled up and sank to the walk.

"I made this statement of my own free will.

"Signed 'Sylvia Overton'."

The record clearly shows that there was no hole or defect in the sidewalk at 28 E. Larned, the place of accident as set forth in the claim of appellee filed on her behalf by her sister on April 1, 1949, or at 38 E. Larned, the location established in the signed statement of appellee under date of April 4, 1949.

Mr. Leydet testified that he made an inspection for the city of the sidewalk at the claimed place of injury shortly after the claim was filed and could find no defect on Larned street.

The only testimony offered by the appellee in regard to the size and description of this hole in the sidewalk on Bates street is as follows:

"After I got out of the hospital, I returned to the scene of the accident with my sister and Rogers Forbes who drove me home. My sister had come to the hospital. I described to her how my accident happened and where it happened. I pointed out the defect from the car. I described fully what happened. I did not tell her what to put in the claim. I didn't know anything about a claim.   *   *   *

"When Mr. Campbell asked me what had happened, I did not tell him I slipped on the glass prisms. I told him 'I fell.' I did not tell Mr. Leydet that I had slipped on the glass prisms. I have read exhibit 4 (Plaintiff's claim filed with the city). It states the accident happened on East Larned. It was not on Larned street at all. It was on Bates street. I did not measure the defect; I just estimated it at 3 inches deep. I knew just where and how the accident happened the very day it happened.   *   *   *

"On Bates a little south of Larned, there is a pole and next to the pole there is a defect in the walk. I stepped up onto the sidewalk and into the defect, which was where a pole had been broken off."

The sister of the appellee who filed the claim and who, appellee testified, accompanied her home from the hospital, did not testify. Neither did Mr. Forbes. The only other witness called by plaintiff who offered any testimony in regard to the location of the place of injury, or description of the defect, was Leorah Holland, a niece of appellee, who had lived with her since 1934. She testified that on the day of the injury:

"I went to the hospital and stayed there with her until a cast was put on her leg. We started home by auto. We first went to the place of the accident at Larned and Bates. Mrs. Overton was using 2 crutches and she pointed from the car. The walk was broken as is shown in the picture (exhibit 3); it was approximately 3 inches deep. I did not measure it. It looked like an iron pipe which had

broken off. There was a good pipe next to it. * * * The broken walk appeared to be not too fresh. It appeared to have been broken for quite some time."

At the conclusion of plaintiff's case, a motion for directed verdict for defendant was made and decision reserved by the court under the Empson act.* The same motion was made at the end of the defendant's proofs, and decision was again reserved under the above act. In both instances defendant stressed the point that the proof disclosed a failure on appellee's part to meet the requirements of CL 1948, § 242.8 (Stat Ann § 9.598), requiring a notice to the city which would "specify the location and nature of said defect, the injury sustained," et cetera; and also, "because the plaintiff has not shown, and she is duty bound under the statute to show it, that the city had knowledge of this defect."

The record discloses that the first information the city had that appellee was claiming damages as a result of a defective sidewalk on Bates street was approximately 6 months after March 31, 1949, when appellee suffered her injury, and that after receiving such notice the city made an inspection and took measurements of the claimed place of injury on Bates street.

The trial court instructed the jury:

"To go back to the question of notice, to determine whether it is sufficient or not, the courts have held, generally, that where an actual measurement has been taken, that it generally can be relied upon more than an estimate. However, in this case you have 2 lines of testimony as to the depth of it. The 2 witnesses for the plaintiff said it was about so deep and when measured it showed approximately 3 inches, or 3-1/2, and the city, through the police officer, went

* CL 1948, § 691.691 et seq. (Stat Ann and Stat Ann 1953 Cum Supp § 27.1461 et seq.).—REPORTER.

there some 6 months later, and they said it was an inch and an eighth. So you have to determine whether it was over 2 inches. If it was over 2 inches, then you have a right to proceed, and you can determine that according to all the evidence in the case, including the pictures and the actual testimony of these witnesses. * * *

"I will charge you that the actual measurements don't prevail unless they are taken at the same time, or at the time of the accident. Here it wasn't. The lady said they looked at it the same day; when they got out of the hospital they went back and looked at it, and it was that deep. Later Mr. Leydet said he measured it. So it becomes a question of fact for the jury as to what it was at the time of the accident. That is for the jury to decide."

There is a sharp conflict of testimony in this case as to whether appellee slipped on wet glass prisms on Larned street or whether she stepped into a hole in the walk on Bates street. This conflict was caused by the failure of the appellee to definitely and accurately specify the location and nature of the defect. When appellee filed a claim establishing she was injured "at sidewalk front of 28 E. Larned, corner of Bates," and supplemented that claim by a signed statement that she "slipped on the glass lights in the sidewalk" on Larned street, the city was not negligent in failing to inspect a hole next to a pole on Bates street. The building located at the corner of Larned and Bates fronts on Larned, and when the claim stated "at sidewalk front of 28 E. Larned, corner of Bates," it was a reasonable inspection and a proper safeguard of the city's rights to inspect and take pictures of the 85 feet of sidewalk on Larned in front of the building, running from the corner to the alley.

The city promptly made the inspection of the hole on Bates street after it first found that appellee was claiming that as the place of injury. More than

6 months had elapsed however, and the court practically nullified that inspection and measurement by instructing the jury that the question for it to decide was not the condition of the hole 6 months after the day of the injury, but the condition on the day of injury. The court further called attention to the testimony of appellee and her niece as to what they saw as they looked at the hole in the sidewalk on Bates street as they returned from the hospital on the day of the injury, and to defendant's testimony in regard to conditions existing 6 months later.

In *Barribeau* v. *City of Detroit,* 147 Mich 119, we said (p 125):

"The requirement that a notice be given is not alone for the purpose of affording the officers of the city opportunity for investigation. It is also for the purpose of confining the plaintiff to a particular 'venue' of the injury. In determining the sufficiency of the notice, excepting perhaps as to the time of the injury, the whole notice and all of the facts stated therein may be used and be considered to determine whether it reasonably apprises the officer upon whom it is required to be served of the place and the cause of the alleged injury. The nature of the defect stated may aid in locating the place, and the place may be stated with such particularity that a very general statement of the defect (cause of the injury) may be aided. *Sargent* v. *City of Lynn,* 138 Mass 599. But to be legally sufficient, a notice must contain a description of the place of the accident so definite as to enable the interested parties to identify it from the notice itself. *Benson* v. *City of Madison,* 101 Wis 312 (77 NW 161); *Carr* v. *Ashland,* 62 NH 665; *Larkin* v. *City of Boston,* 128 Mass 521; *Rogers* v. *Inhabitants of Shirley,* 74 Me 144; *Lee* v. *Village of Greenwich,* 48 App Div 391 (63 NYS 160). This rule permits a construction of the statute provision which does not emasculate

it and one which is in accord with the opinions of this Court in *Brown* v. *City of Owosso,* 126 Mich 91 (9 Am Neg Rep 505); *Tattan* v. *City of Detroit,* 128 Mich 650; and *Oesterreich* v. *City of Detroit,* 137 Mich 415. When parol evidence is required to determine both the place and the nature of the defect, a reasonable notice has not been given to the city."

In *Ridgeway* v. *City of Escanaba,* 154 Mich 68, the Court said (p 72):

"Counsel urge that no description of the injury was necessary under the language of the statute, which he says mentions the extent of the injury, but not the nature, and he argues that this refers only to the amount of his claim. We do not so understand the statute, unless it is to be practically emasculated by construction. We must say that the legislature intended to give to defendants in such cases some protection against unjust raids upon their treasuries by unscrupulous prosecution of trumped-up, exaggerated, and stale claims, by requiring a claimant to give definite information to the city or village against whom it is asserted, at a time when the matter is fresh, conditions unchanged, and witnesses thereto and to the accident within reach. It is a just law, necessary to the protection of the taxpayer, who bears the burden of unjust judgments. It requires only ordinary knowledge and diligence on the part of the injured and his counsel, and there is no reason for relieving them from the requirements of this statute that would not be applicable to any other statute of limitation. We have never held a notice ineffective when it could reasonably be said to be a substantial compliance with the law, but we think that cannot be said of this notice."

Appellee's notice failed to confine "the plaintiff to a particular 'venue' of injury," and to "apprise the officer upon whom it is required to be served of the

place and the cause of the alleged injury." In *Barribeau* v. *City of Detroit, supra,* it was stated (p 125):

"The nature of the defect stated may aid in locating the place, and the place may be stated with such particularity that a very general statement of the defect * * * may be aided."

Appellee's notice of claim failed to meet this test. The defect, if any, was comparatively easy to describe, and it is difficult to understand how appellee failed to make any reference to the location in the claim filed April 1, 1949, and in her signed statement of April 4, 1949, as later established by her testimony in March, 1953, that: "On Bates a little south of Larned, there is a pole and next to the pole there is a defect in the walk." Parol evidence was required in this case "to determine both the place and the nature of the defect" and, applying the test set forth in *Barribeau* v. *City of Detroit, supra,* there is but one conclusion, namely: A reasonable notice was not given to the city.

No evidence was introduced which would justify a verdict based on the fact that the city had notice of the claimed defect prior to the date of injury, or that said defect had existed for 30 days prior to said date. The court erred in denying defendant's motion for a directed verdict.

This Court held in *McGrail* v. *City of Kalamazoo,* 94 Mich 52, that:

"Notice to the proper officers of a city that a sidewalk is out of repair cannot be inferred unless the defect is open and notorious, of long standing, and of such a character as would naturally arrest the attention of passers-by; and the burden of proof to establish these facts is upon the party complaining of the nonrepair." (Syllabus.)

There is absolutely no evidence that the city had proper notice. The only testimony that even re-

motely referred to the 30-day period of existence of the defect, as required to establish the presumption of notice by CL 1948, § 242.6 (Stat Ann § 9.596), was the statement of Leorah Holland, niece of appellee, who stated: "The broken walk appeared to be not too fresh. It appeared to have been broken for quite some time." This certainly did not meet the test of the statute.

Plaintiff's cross-examination of John Campbell, who worked in a store only a few feet from where the injury is claimed to have occurred, established that not only was the defect not of such a nature as to arrest the attention of people passing by, but was not referred to or pointed out by appellee as he talked to her almost immediately after the injury occurred. Campbell testified: "I don't know anything about the pole that seems to have been broken off. I do not know how long it had been that way. I know of no one else who had fallen on it." The appellee failed to file a proper claim and proof that the defect had existed 30 days, or that the city had notice thereof.

The court erred in denying defendant's motion for a directed verdict. Reversed and remanded for entry of judgment for defendant. Costs to defendant.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.