## CITY OF WAXAHACHIE v. HARVEY.
### No. 3046.

Court of Civil Appeals of Texas. Waco.
Jan. 29, 1953.

Rehearing Denied March 5, 1953.

Warwick H. Jenkins, City Attorney, Waxahachie, for appellant.

Lynn B. Griffith and Milton Hartsfield, Waxahachie, for appellee.

HALE, Justice.

Appellee sued appellant, a home rule city, for damages on account of personal injuries sustained by him when, on the night of May 28, 1949, he fell into a hole or ditch in a public sidewalk within the corporate limits of the city. As grounds of the recovery sought by him he alleged that his injuries and damages were proximately caused by the negligence of appellant in permitting its sidewalk to remain in a defective condition and in failing to give proper warning of such defect. Appellant answered with a general denial and certain affirmative defenses. The case was tried before a jury and resulted in a verdict favorable to appellee on the special issues submitted, including a finding of $7,541.66 as the amount that would reasonably compensate appellee for his injuries and damages. At a hearing on appellant's motion for judgment in its

favor non obstante veredicto, the trial judge suggested a remittitur to which appellee agreed and thereupon judgment was rendered in favor of appellee for $4,000. Thereafter, appellant filed and presented its motion for new trial which was overruled and hence the appeal.

The first point in appellant's brief is as follows: "Appellee was not entitled to recover judgment because the undisputed evidence in the record shows that he failed to give notice of his injuries to the City within ninety days of his injuries as required by the City's charter." On the other hand, appellee says he was entitled to recover because the jury found that he was physically and mentally unable for a continuous period of ninety days after the accident to give notice of his claim for damages to the city and if, under such circumstances, the intended purpose or effect of the charter provision relied upon by appellant was to exempt it from legal liability for the consequences of its wrongful conduct, then in that event such charter provision was and is invalid as applied to the facts of this case because in violation of Art. 1, Sec. 13 of the Constitution of Texas, Vernon's Ann.St.

Art. 14, Sec. 9 of appellant's charter as the same existed at all times material to this suit reads as follows:

"The city shall not be liable on account of any claim for damages to any person or property unless the person asserting such claim or someone for such person shall give to the city written notice of such claim within ninety days from the time it is claimed that such damages were inflicted, with a statement of facts reasonably sufficient to form the basis of an intelligent investigation, and no suit shall be instituted or maintained on any such claim until the expiration of ninety days from the time such notice shall have been given."

The record before us discloses that no written notice of appellee's claim for damages on account of his injuries was given to appellant until October 26, 1949, which was more than ninety days after the injuries were sustained on May 28, 1949.

However, the record further discloses that appellee pleaded and the jury found in effect that by reason of his injuries appellee was physically and mentally incapable for a continuous period of ninety days thereafter of giving or directing someone else to give for him written notice to appellant of his claim for damages. No question is raised by appellant as to the sufficiency of the evidence to sustain the findings of the jury in this respect, or as to the manner or form in which the issues relevant thereto were submitted.

In the case of City of Tyler v. Ingram, Tex.Civ.App., 157 S.W.2d 184, 189, the court expressly held on the precise point here involved that a requirement in the charter of the City of Tyler for written notice of injury within thirty days from the happening thereof "necessarily presupposes the existence of a person capable of giving it, and therefore applicable only to such persons. Upon such grounds only, and with such implied exception to its application, can the charter provision be held constitutional in this state, where the right to sue a city for actionable negligence is held to be a common law right as distinguishable from such a right when created by statute." We believe this holding is sound. Although the Supreme Court granted a writ of error in the Ingram case and, on hearing, reversed the judgments of the trial court and of the Court of Civil Appeals and rendered judgment in favor of the City of Tyler v. Ingram, 139 Tex. 600, 164 S.W.2d 516, we find nothing in the opinion of the Supreme Court which indicates to us that it was in disagreement with the views expressed in the opinion of the Court of Civil Appeals with respect to the issue of written notice as required by the city charter. The action of the Supreme Court, as we understand its opinion, was based upon its holding that the agents and employees of the City of Tyler were engaged in the performance of governmental as distinguished from proprietary functions in the discharge of the duties of which complaint was made and hence the city was not liable for damages resulting from such claimed negligence, regardless of whether the claimant was or

was not exempt from the applicability of the charter provision with respect to written notice of her claim for damages.

In the case of City of Waco v. Landingham, 138 Tex. 156, 157 S.W.2d 631, the contention was made that a notice provision contained in the charter of the City of Waco was unconstitutional because it was unreasonable and discriminatory in that it was not possible to give such provision a fair and impartial application in all instances. The Supreme Court overruled this contention upon the implication, if not upon the express holding, that even though such charter provision could not be universally applied in all cases without being unreasonable or discriminatory in some cases, it was not unconstitutional when applied only to cases where its application would not be unreasonable or discriminatory.

In our opinion, the provision in appellant's charter with respect to written notice, if applied as a defense against liability under the facts found by the jury in this case, would not only render such provision discriminatory against appellee but would be unreasonable, in that the effect thereof would be to deprive appellee of any right of recovery solely because he failed to do that which under the findings of the jury it was impossible for him to do. We do not think the trial court erred in failing or refusing to give the charter provision such construction or application in this case. Therefore, the first point in appellant's brief is overruled.

Under other points in its brief, appellant contends that the trial court erred in overruling its motion for a directed verdict and its motion for judgment non obstante veredicto because (a) there was no evidence that appellant's agents or employees caused the defective condition of its sidewalk or that they had actual or constructive notice thereof in sufficient time, by the exercise of ordinary care, to remedy the same; (b) appellee was guilty of contributory negligence as a matter of law; and (c) appellee voluntarily exposed himself to the risk of the dangers of which he complains. Without attempting to set forth the evidence relating to these several contentions, it must suffice to say that after a careful examination of the entire record we have concluded that the evidence in the case was such as to carry the component fact elements of these general issues to the jury and consequently we do not think the trial court erred in overruling appellant's motion for a peremptory instruction or its motion for judgment in its favor notwithstanding the verdict of the jury.

Under the remaining points in its brief, appellant says the judgment should be reversed and the cause remanded for a new trial because of material misconduct of the jury (a) in discussing the amount of attorney's fees appellee might be required to pay out of what he recovered; (b) in using the "lot" or "quotient" method in arriving at their answer to the damage issue; (c) in discussing the question of insurance; and (d) in discussing the expressed belief of one or more of the jurors that the charter provision with respect to written notice of claim for damages was unjust and inequitable and constituted an unfair and undue burden on appellee, he in all probability not knowing of such provision, and, such provision not being generally known to the public, it should not be allowed to prevent appellee from recovering judgment. We sustain this contention.

Upon the hearing of appellant's motion for new trial, three jurors testified without dispute that during the jury's consideration of the damage issue several of the jurors speculated upon and discussed the amount of attorney's fees appellee would be required to pay out of his recovery and two of the jurors testified affirmatively that they each considered the probable amount of attorney's fees appellee would have to pay in their determination of the damage issue. One of the jurors testified in part as follows:

"Q. Well, do you recall what was said with regard to attorney fees? A. Well, some of them said they got a fourth and some of them said they got a paid basis and I told them of a case of mine several years ago; that I had one that never came to court and they charged me a third and I didn't know what those fellows were hoping to get. I was just illustrating; it

wasn't for us to take care of that.

\* \* \*

"Q. And those factors were taken into consideration on the issue of how much you all were going to give him and it was done before you arrived at that judgment; in other words, before you arrived at the amount of money, is that correct? A. Well, yes. We had agreed to give him enough to take care of his expenses.

"Q. And that included his attorney's fees and medical and hospital bills? A. Yes sir."

The undisputed evidence adduced at the hearing on appellant's motion for new trial further shows that after the jurors had discussed the matter of attorney's fees and before they had reached any agreement on the damage issue, one of the jurors stated in effect that if this was a case under the Workmen's Compensation Act he knew about what the amount of the damages should be. Thereafter, the foreman of the jury suggested that each juror write down on a slip of paper the amount of money which he thought would reasonably compensate appellee for his damages, that they then add the amounts thus written down by each juror and divide the result by twelve. This was done and the result thereof was exactly $7,541.66. One of the jurors, when asked if any of them wanted to "round off" the amount they had found, said: "I don't know for sure whether there was anything said in there or not, but I remember I thought about it that it might have looked a little better. It seemed kind of funny; all those pennies and everything." Another of the jurors, after testifying to the manner in which the jury arrived at the amount of damages, was asked: "Q. Well, was it suggested and agreed by the jury that they would use that method and would abide by that method, whatever came out? A. Yes sir."

The evidence further shows conclusively, we think, that there was a general discussion among the jurors with respect to the legal effect which their answers would have upon the rights of the parties in regard to whether appellee was physically and men-tally unable within a period of ninety days to give written notice to appellant of his claim for damages. The undisputed testimony of one of the jurors on this issue was in part as follows:

"Q. Well, do you recall in that discussion whether or not anybody said anything about the charter provision of the City not being fair and not being right and that the citizens didn't know about it and Mr. Harvey didn't know about it and that the jury ought not to let that charter provision keep him from getting a judgment, or words to that effect? A. Well, I believe, as well as I remember, that most of them seemed to think that he didn't know it.

"Q. That he didn't know about the charter provision? A. Yes sir.

"Q. Well sir, was there anything further said about that provision as to whether or not it was a fair provision and right? A. Well, they didn't seem to think it was right—or fair.

"Q. Well, state whether or not they seemed to think it ought to keep him from getting a recovery? A. Well, I don't think so.

"Q. You didn't think that should be allowed to keep him from getting a recovery? A. I didn't believe it should.

"Q. In other words, Mr. Beasley, in connection with those questions it was—there was a general feeling in the jury room as they expressed themselves of being against that kind of a charter provision? A. Yes sir."

It is readily apparent that the foregoing discussions in the deliberations of the jury were improper and that such improper discussions were of such a nature as were reasonably calculated to prejudice the rights of appellant to a fair and impartial verdict based solely upon the evidence introduced in the case. Before such discussions were had, at least one of the jurors was of the opinion that $500 was a proper answer to the damage issue and it also appears that some of the jurors were of the opinion that appellee was not physically and

mentally unable for a continuous period of ninety days to give written notice to appellant of his claim for damages.

We think the undisputed evidence adduced upon the hearing of appellant's motion for a new trial shows conclusively that there' was material misconduct on the part of the jury in the trial of this cause and it appears to us from the record as a whole that injury did in all reasonable probability result to appellant as a consequence of such misconduct. We base our conclusion in part upon the holding in the following cases cited by appellant: White Cabs v. Moore, 146 Tex. 101, 203 S.W.2d 200; Burkett v. Slauson, Tex.Sup., 237 S.W.2d 253; Yellow Cab & Baggage Co. of San Antonio v. Donnell, Tex.Civ.App., 159 S.W.2d 946; Gillette Motor Transport Co. v. Whitfield, Tex.Civ.App., 160 S.W.2d 290; Texas & P. Ry. Co. v. Mix, Tex.Civ.App., 193 S.W. 2d 542.

Accordingly, the judgment appealed from is reversed and the cause is remanded to the court below for another trial.

McDONALD, C. J., took no part in the consideration or disposition of this case.