TREBOVICH *v.* CITY OF DETROIT.

DECISION OF THE COURT.

1. HIGHWAYS AND STREETS—DEFECTIVE CONDITION—NOTICE TO CITY—
ACCELERATED JUDGMENT.

Accelerated judgment for defendant city in action by guardian
of person who is alleged to have been rendered mentally in-
competent by reason of injuries sustained in fall on defective
sidewalk is affirmed, where it appears notice was not given
defendant within time prescribed by statute according the right
of action (CL 1948, §§ 242.1–242.8, as amended by PA 1951,
No 19; GCR 1963, 116).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 11] 25 Am Jur, Highways §§ 437, 438.
38 Am Jur, Municipal Corporations §§ 673, 675.
[2, 15, 20, 22] 38 Am Jur, Municipal Corporations §§ 703, 704.
Infancy or incapacity as affecting notice required as condition of
holding municipality or other political subdivision liable for
personal injury.  34 ALR2d 725.
[3] 16 Am Jur 2d, Constitutional Law §§ 210, 211.
[4] 5 Am Jur 2d, Appeal and Error § 1009; 20 Am Jur 2d, Costs § 34.
[5] 50 Am Jur, Statutes § 228.
[6] 50 Am Jur, Statutes § 227.
[7, 8] 50 Am Jur, Statutes §§ 217, 219, 223, 224.
[9] 38 Am Jur, Municipal Corporations §§ 674, 702–704.
[10] 38 Am Jur, Municipal Corporations §§ 571, 585, 593.
[12] 5 Am Jur 2d, Appeal and Error §§ 726, 727.
20 Am Jur 2d, Courts § 67.
[13] 38 Am Jur, Municipal Corporations § 702.
Waiver of failure to give notice of claim or injury as condition
of municipal liability for injury from defect in street or other
public place.  82 ALR 749, 153 ALR 329, 65 ALR2d 1278.
[14] 38 Am Jur, Municipal Corporations § 674.
[16] 50 Am Jur, Statutes §§ 217, 223, 227, 235, 303, 304.
[17] 50 Am Jur, Statutes § 223.
[18] 50 Am Jur, Statutes §§ 239, 240.
[19] 38 Am Jur, Municipal Corporations §§ 675, 684, 690–696, 703,
704.
[21] 50 Am Jur, Statutes §§ 217, 219, 221.
[23] 5 Am Jur 2d, Appeal and Error §§ 723, 725, 726.

Separate Opinion.

Dethmers, Kelly, and Black, JJ.

2. Highways and Streets—Notice of Injury—Mental and Physical Competency.

*The giving of a written notice of injury to defendant city in the form and within the time specified by statute is not excused by reason of the fact that the person was rendered mentally and physically incapacitated as a result of the injuries sustained, since the statute under which such action may be brought contains no exemption of persons under legal disability (CL 1948, §§ 242.1–242.8, as amended by PA 1951, No 19).*

3. Constitutional Law—Governmental Immunity from Tort—Separation of Powers.

*Courts may not fashion or manufacture ways or words to get around a clear legislative declaration as to immunity of a governmental unit from tort liability, since to do so would violate the principle of constitutional law separating the judicial power from the legislative power (Const 1908, art 4; Const 1963, art 3, § 2).*

4. Costs—Defective Sidewalk—Written Notice.

*No costs are allowed in action against city by person allegedly so injured as to be rendered mentally and physically incompetent because of defective sidewalk, where motion by defendant for accelerated judgment based on lack of proper written notice had been granted (CL 1948, §§ 242.1–242.8, as amended by PA 1951, No 19).*

Separate Supplemental Opinion.

Black, J.

5. Statutes—Judicial Amendment.

*Reversal of judgment for defendant city in action for damages for injuries alleged to have resulted in mental incapacity of plaintiff by judicial amendment of the statute relied upon would result in far reaching amendment to both that statute and the more recent superseding statute (CL 1948, § 242.1 et seq.; as amended by PA 1951, No 19; PA 1964, No 170).*

6. Same—Construction—Constitutional Law.

*Courts are bound to apply plainly written statutes as they read without reference to equitable considerations, where no constitutional questions have been raised, even though the statute as written be harsh or barbarous.*

7. SAME—CONSTRUCTION—LEGISLATIVE INTENT.

*No intent may be imputed to the legislature in the enactment of a plainly written law other than such is supported by the face of the law itself, and courts may not speculate as to the probable intent of the legislature beyond the words employed in the act.*

8. SAME—CONSTRUCTION—HARDSHIP.

*The fact that a plain, unambiguous statute may, in certain instances, work great hardship is an argument that should be addressed to the legislature rather than to the court.*

9. SAME—LEGAL DISABILITY—NOTICE REQUIREMENT—PURPOSE.

*The reason the legislature neglected to exempt persons under legal disability from the notice requirements of statute according a right of action for personal injuries due to defective sidewalk or highway was to guard the treasuries of local units of government from the possibility, if not probability, of spurious claims against which no defense could be made for want of timely notice and opportunity of timely investigation (CL 1948, § 242.8).*

10. ACTION—STATUTES—DEFECTIVE SIDEWALK OR HIGHWAY.

*The statutory right of action against a township, city, or village, accorded one injured by reason of a defective sidewalk or highway, and abrogating the common-law liability of such municipalities, is upon conditions, imposed within the statute (CL 1948, §§ 242.1–242.8, as amended by PA 1951, No 19).*

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and KELLY, O'HARA, and ADAMS, JJ.

11. HIGHWAYS AND STREETS—NOTICE OF INJURY.

*Grant of accelerated judgment for defendant in suit by plaintiff against the defendant city for damages she suffered from a fall on a defective sidewalk where plaintiff was rendered mentally and physically incapacitated as a result of the injuries sustained and who failed to give notice to the city within 60 days as required by the statute is affirmed, as the right of action asserted is statutory and to accrue it must possess all the statutory elements, including timely notice (CL 1948, §§ 242.1–242.8, as amended by PA 1951, No 19).*

DISSENTING OPINION.

SOURIS and SMITH, JJ.

12. COURTS—CONSTRUCTION OF OPINIONS.

*The language of a decision must be construed with reference to and confined to the facts of that case.*

13. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALK—NOTICE OF INJURY—WAIVER—STATUTES.

*Statutory requirement that written notice of bodily injury, allegedly sustained by reason of neglect to keep sidewalk under control of the city in reasonable repair and in condition reasonably safe and fit for public travel, be given to the city within 60 days of the time of the happening thereof may be waived, that is, may not be necessary, in certain circumstances, although nowhere in the statute is such principle of waiver recognized (CL 1948, § 242.8).*

14. SAME—DEFECTIVE SIDEWALK—NOTICE.

*The notice provision in statute according one injured by reason of a defective sidewalk a right of action against a municipality was designed to protect the public (CL 1948, § 242.8).*

15. SAME—DEFECTIVE SIDEWALK—FAILURE TO GIVE NOTICE.

*Failure to give timely written notice of injury, claimed to have been received because of defective sidewalk, does not bar a claim for such injuries when the failure is attributable to an incapacity caused by the defendant municipality's negligence, since the law does not seek to compel that which is impossible (CL 1948, § 242.8).*

16. STATUTES—CONSTRUCTION.

*A remedial statute which is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good is to be liberally construed.*

17. SAME—CONSTRUCTION—INTENT—ABSURDITY—INJUSTICE.

*Intent of the legislature is the guide for interpreting statutes, and interpretation should be made, if possible, so as to avoid manifest absurdity and injustice.*

18. SAME—MODIFICATION OF MEANING OF WORDS USED.

*Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it which modifies the meaning of the words, and even the structure of the*

*sentence either by giving an unusual meaning to particular words, altering their collocation, rejecting them altogether or by interpolating other words, under the influence of an irresistible conviction that the modifications thus made are mere corrections of careless language and really give the true intention.*

19. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALKS—NOTICE—CONSTRUCTION OF STATUTES—COMPETENCY OF INJURED PERSON.

*Statute which accorded a new remedy for persons injured by a municipality's negligence in maintenance of a defective sidewalk and provided that it "be necessary to show that such person did serve written notice upon said city or village within 60 days from the time of the happening of such injury" and that the notice "specify the location and nature of said defect, the injury sustained, and the names of witnesses known at the time by claimant" assumes that the injured party is mentally competent (CL 1948, § 242.8).*

20. SAME—DEFECTIVE SIDEWALK—NOTICE—CONSTRUCTION OF STATUTES—MENTAL COMPETENCY.

*Construction of statute relative to remedy of person injured by reason of a defective sidewalk so that he would not be entitled to recover where he was rendered so incompetent as to be unable to give written notice required to be made within 60 days would be ascribing a legislative intent that was manifestly absurd, and permit the defendant municipality to profit from its own wrong (CL 1948, § 242.8).*

21. STATUTES—CONSTRUCTION—MAXIM.

*It must be presumed that when a legislature enacts a statute giving a remedy that a defendant included therein should not be permitted to profit by his own wrong.*

22. MUNICIPAL CORPORATIONS—TORTS—NOTICE.

*One incapacitated by a municipality's tort from giving timely statutory notice of that tort is not thereby automatically precluded from bringing an action within the 2-year limitational period (CL 1948, § 242.8).*

23. APPEAL AND ERROR—QUESTIONS REVIEWABLE—QUESTIONS FOR TRIER OF FACTS.

*Questions of fact in an action at law, not passed upon by the trial court by reason of the dismissal of the case on a point of law, are not determined by the Supreme Court on appeal, where case is reversed for trial.*

· Appeal from Wayne; Brennan (Thomas E.), J. Submitted November 4, 1965. (Calendar No. 17, Docket No. 50,660.) Decided June 8, 1966.

Complaint by Rachel Trbovich, by Nicholas Trbovich, her guardian, against the City of Detroit, a municipal corporation, for injuries allegedly arising from a fall on a sidewalk on June 8, 1962, and by John W. Dunwoodie for expenses. Accelerated judgment for defendant. Plaintiffs appeal. Affirmed.

*Ellsworth K. Hanlon* (*James P. Tryand,* of counsel), for plaintiffs.

*Robert Reese,* Corporation Counsel, *Alfred Sawaya* and *Andrew F. Valenti,* Assistants Corporation Counsel, for defendant.

BLACK, J. Counsel for plaintiff-appellants have correctly stated the controlling question:

"Is a plaintiff, mentally and physically incapacitated as a result of injuries sustained because of a defective sidewalk, excused from giving written notice to the defendant city in the form and within the time specified in section 8 of chapter 22 of the general highway statute (CL 1948, § 242.8 [Stat Ann 1958 Rev § 9.598])?"

Our answer is "No."

The statute under which this suit was brought (CL 1948, §§ 242.1–242.8, amended by PA 1951, No 19 [Stat Ann 1958 Rev §§ 9.591–9.598])[1] includes no clause exempting, or words importing legislative intent to exempt, persons under legal disability from performance of the requirement of timely statutory

[1] Repealed and superseded by PA 1964, No 170 (CL 1948, § 691-.1401 *et seq.* [Stat Ann 1965 Cum Supp § 3.996(101) *et seq.*]).

notice to the township, village, or city such persons would sue for bodily injuries sustained on public ways.

To what was written in *Boike* v. *City of Flint*, 374 Mich 462, we add direct reference to section 5 of the statute (CL 1948, § 242.5 [Stat Ann 1958 Rev § 9.595]). That section pointedly declares that "No township, village or city in this state shall be liable in damages, or otherwise," to any person or persons for bodily injury sustained upon any of the ways of such township, village or city "except under and according to the provisions of this act." Such legislative declaration is clear. The courts may not fashion or manufacture ways or words to get around it without offense to that exalted principle of constitutional law which separates the judicial power from the legislative power.[2]

In *Davidson* v. *City of Muskegon*, 111 Mich 454,[3] we held that a charter provision corresponding to the notice provisions of the statute could not be avoided even where the rights of an infant were involved. That principle must be applied here.

Affirmed, without an award of costs.

DETHMERS and KELLY, JJ., concurred with BLACK, J.

SUPPLEMENTAL OPINION OF JUSTICE BLACK: This case, previously assigned to the writer, was submitted on briefs and arguments November 4, 1965. Pursuant to that assignment the above opinion for affirmance was submitted to the other Justices January 8, 1966. Since then Justice SOURIS' opinion for reversal, this supplemental opinion[1] and Justice

---

[2] See Const 1908, art 4; Const 1963, art 3, § 2.—REPORTER.

[3] Followed in *Bankers' Trust Co. of Detroit* v. *Tatti*, 258 Mich 357, 359.

[1] Revised June 2 only with regard for Justice SOURIS' footnote added by him June 1.

O'Hara's separate opinion for affirmance have been written and delivered to the other Justices.

Our delay of disposition is reflected causally by the following internal record of study and restudy, and submission of additional opinions, since the foregoing initial opinion was turned in:

February 8—Case held for study or writing by Justice SOURIS.

February 23—Opinion of Justice SOURIS for reversal submitted.

March 8—Case held for study or writing by Chief Justice T. M. KAVANAGH.

April 5—Case held for study or writing by Justice O'HARA.

April 25—Memorandum of Chief Justice withdrawing his "hold" of case.

May 9—Supplemental opinion of Justice BLACK submitted.

May 10—Opinion of Justice O'HARA for affirmance submitted.

May 10—Case held for further study or writing by Justice SOURIS.

Ordinarily, in a situation of unresolvable discord like this, the dissident opinions go the blind round of our conference table. "That's the way it is."[2] Here, however, it is imperative that something not visible in that opinion for reversal be brought to the fore, that is to - say, reversal of the circuit court's judgment for the reasons proposed will amend retroactively much more of the statutory law than that which has been encompassed by the act under which this plaintiff sues.[3]

---

[2] For a description of the infantile poker game the Court insists on playing each opinion day, see *Keenan* v. *County of Midland,* 377 Mich at 66.

[3] Here there is no obnoxious interpretation of the act under which plaintiff has sued which, for any desired result, might be seized upon for overruling. There is just a minutely worded statute the sections

By our votes for and against reversal of the circuit court's judgment we are due to amend retroactively, or refuse to amend at all, *two* statutes rather than the *one* upon which plaintiff has planted her suit. Her cause allegedly arose in 1962, under a venerable statute as it stood that year (CLS 1961, § 242.1 [Stat Ann 1958 Rev § 9.591]). Since then, by PA 1964, No 170, effective July 1, 1965, the legislature has expressly repealed that statute and has superseded it with another the entitled design of which is "to make uniform the liability of municipal corporations, political subdivisions, and the State, its agencies and departments," et cetera.

The inevitable impact of a decision to reverse the circuit court's judgment for the reasons now proposed, especially upon sections 4 and 7 of the superseding statute, will be manifest to all who keep tab on the headlong trend of recent opinions handed down for cases wherein damages for personal injuries or death are sought. In furtherance of that trend a dual holding—unannounced—is actually proposed; that the legislative assembly of 1964 as well as the assembly of 1915 did not mean what was written into both statutes; that each assembly really meant to exempt claimants under legal disability. from the condition of giving the timely written notice which section 8 of chapter 22 of the repealed statute required and section 4 of the new statute now requires.

Assuming that the Court is going to proceed *judicially,* let it be noted that no one thus far (plaintiff's counsel and Justice Souris included) has alleged that there are words or phrases, or doubtful. meanings of words and phrases, *in any one of the 8. sections of the act under which plaintiff has sued,*

of which have stood understood by everyone since seven of us either were in grade school or not yet around to testify about the intention of the 1915 legislative assembly. More of this later.

which might be regarded as hinting that a person under legal disability is exempt from the aforesaid requirement of timely written notice. This time, for certain, the legislative message *as written* provides no peg of ambiguity for the beret of anyone who bleeds freely for plaintiffs in civil cases and defendants in criminal cases. So for the first time in our books the profession is about to find written, not an affirmative finding of legislative purpose drawn from dubious meaning of statutory words and phrases but rather a negative *dixit* of personal judicial belief, made up more than a half century after the fact, that the assembly of 1915 really "didn't mean it"; also that such negative belief leaves the judicial branch free to write into the act affirmative words of exemption which the 1915 legislature chose not to insert or include. I for one will have no part in any such crude appropriation of legislative power, this being one sure instance where self-discipline as well as self-restraint is due judicial process.

True enough, the act as written was harsh and remained so in its application to claimants under legal disability while the 60-day period proceeded to its end. It may even be decried as "barbarous," that being the currently supplied reason for judicial amendment of those statutes which claimants of damages for personal injuries and death sue under and yet would avoid as to the restrictive parts thereof. Accepting all that, it is nonetheless true that the judicial branch is bound to apply plainly written statutes as they read, no constitutional question having been raised below.[4] And if by judicial edict

---

[4] It is true here, just as was noted by footnote in the *Boike* Case (*Boike* v. *City of Flint*), 374 Mich 462 at 464, that:

"The constitutionality of section 8, insofar as it applies to infants or others under legal disability, has not as yet been put to test."

that is no longer to be so, let the Court openly say so, and why.

All that is offered in support of this latest motion to amend a statute by judicial process is the mentioned statement of personal belief, spiced only by decisions picked and chosen from some other jurisdictions. To all this, hard fact that it may be for a possibly hard case,[5] the legislature has responded in simple English:

"Sec. 5. *No township, village or city in this state shall be liable in damages, or otherwise,* to any person or persons for bodily injury, or for injury to any property sustained upon any of the public high-ways, streets, bridges, sidewalks, crosswalks or culverts, in such townships, villages or cities, *except under and according to the provisions of this act, and the common law liability of townships, villages and cities of this State,* for or on account of bodily injuries sustained by any person by reason of neglect to keep in repair public highways, streets, bridges, sidewalks, crosswalks or culverts, *is hereby abrogated."* (CL 1948, § 242.5 (Stat Ann 1958 Rev § 9.595).

And said section 8 concludes:

*"The intent and purpose of the provisions of this chapter are to make the law of liability* on the part of townships, villages and cities for injuries sustained by persons because of the defective condition of the highways *and the procedure in giving notice thereof, uniform throughout the State,* and to repeal all laws or acts of the legislature be the same general, local or special which are inconsistent with

---

[5] This may or may not be a "hard" case. It is here on grant of summary motion. Plaintiff did not establish under Rule 116 any of the facts crucial to her complaint. In a word, the defendant municipality has not as yet been convicted of having been negligent, or of having seen "to it that [its] negligence [was] sufficiently gross to insure the complete physical and mental disability of the victim." (The quoted bombast appears in the submitted opinion for reversal, post at p 101.)

or contravening the provisions herein. All actions in court under this act must be brought within 2 years from the time said injury was sustained." CL 1948, § 242.8 (Stat Ann 1958 Rev § 9.598).

The emphasis is that of the present writer.

No lawyer, conscious of and respectful for the constitutional inhibition (Const 1963, art 3, § 2) and the applicable rule of construction (found with copious citation in *City of Lansing* v. *Township of Lansing*, 356 Mich 641 at 648–650), could read this statute without concluding that it is the present duty of the Court, again as in the law case of *Mercy Hospital* v. *Crippled Children's Comm.*, 340 Mich 404 at 408, to apply it as it reads "without reference to equitable considerations." As was written for the Court by then Associate Justice T. M. KAVANAGH in the *City of Lansing Case* (at pp 649, 650):

"No intent may be imputed to the legislature in the enactment of a law other than such is supported by the face of the law itself. The courts may not speculate as to the probable intent of the legislature beyond the words employed in the act."[6]

Surely, by this time, jurisprudential Michigan has seen enough of this business of research-travel beyond her borders to locate and cite court decisions which

(a) No one pretends appeared in the reports of a State from which Michigan subsequently took and enacted the statute in scrutiny, and

(b) No one claims have construed and applied enactments which at the time of decision corresponded precisely with such statute.

---

[6] At p 650 Justice T. M. KAVANAGH wrote further that "An argument that a statute as construed may, in certain instances, work great hardship is one that should be addressed to the legislature rather than the court."

And nothing in the law and nothing thus far written into our books sustains the empirical notion that newcomer judges seated here may second-guess a legislative assembly which met and adjourned a half century ago after having decided to amend the statute as it stood before the assembly at the time (see CL 1915, § 4584 *et seq.,* re-enacting CL 1897, § 3441 *et seq.*).   In and with that assembly was vested, exclusively by the Constitution, the power to determine and enact into law the policy of Michigan as regards the right of action created by section 1 of chapter 22 of the act.   In and with that assembly the Constitution vested, just as exclusively, the right to choose to exempt, or not exempt, persons under legal disability from the requirements of said section 8.   The assembly chose not to so exempt for a special reason oft written into law.   That reason was to guard the treasures of local units of government from the possibility, if not probability, of spurious claims against which no defense could be made for want of timely notice and opportunity of timely investigation.   True, the assembly *could* have chosen the more liberal type of statute.   But it did not, and it beseems no member of this Court to repudiate the choice thus made.

Now if this Court is to respect the constitutional position of the third branch *vis-a-vis* the legislative branch, if its members are to heed the rules we ourselves have set up for employment where statutes are involved, we must accord to the assembly of 1915 due knowledge that it had a right to enact— or refuse to enact—an exemption of the kind considered; for example as shown in *Nash* v. *Inhabitants of South Hadley,* 145 Mass 105, 106 (13 NE 376, 377), and *Hooge* v. *City of Milnor,* 56 ND 285, 290 (217 NW 163, 164).[7]

---

[7] These cases are not offered as citations supporting the views expressed by the writer.  No outside case means anything, our statute

In the *Nash Case* the statute requiring notice, within 30 days after the injury "to the town claimed to be responsible therefor," ended up with this proviso:

"but if, from physical or mental incapacity, it is impossible for the person injured to give the notice within the time provided in said section, he may give the same within 10 days after such incapacity is removed, and in case of his death without having given the notice, and without having been, for 10 days at any time after the injury, of sufficient capacity to give the notice, his executor or administrator may give such notice within 30 days after his appointment."

In the *Hooge Case* the statute similarly required notice "within 30 days from the happening of such injury." It then went on to provide:

"In case it appears by the affidavit of a reputable physician which shall be prima facie evidence of the fact that the person injured was, by the injury complained of, rendered mentally incapable of making such statement during the time herein provided, such statement may be made within 30 days after such complainant becomes competent to make the same, but such affidavit may be controverted on the trial of an action for such damages, and in case of the death of the person injured prior to his becoming competent to make such statement, the same may be made within 30 days after his death, by any person having knowledge of the facts, and the person making such statement shall set forth therein specifically the facts relating to such injury as aforesaid, of which he has personal knowledge, and shall

and the *Davidson* Case (*Davidson* v. *City of Muskegon*, 111 Mich 454) considered. The two cases are mentioned solely for the purpose of exhibiting the kind of exemption Michigan has *not* enacted; the kind of exemption other legislatures *had* enacted and placed in effect: prior to 1915; the kind the Brethren standing for reversal might properly write if, in addition to judicial power, they were possessed of legislative authority.

positively verify such statement and shall verify the facts therein stated of which he has no personal knowledge, to the best of his knowledge, information and belief."

Since we are debating an alleged "hard" case, let it be said that the "hard" fact here is that our legislature, in 1915 and again in 1964, decided *not* to exempt *any* claimant from the requirement of timely written notice. That leaves judicial legislation the only way—the unconstitutional way—by which plaintiff *in this action* may be "excused" from that which section 8 of the statute required as a condition of the coming into being, in her favor, of the right she has alleged under section 1 of the same statute.

## CONCLUSION.

*First:* We are *not* dealing with a common-law right. Neither are we dealing with any species of common-law action. If we were most certainly some of us, the writer included, would give due thought to our continuing tenet that the common law is exclusively in the hands of the judicial branch and, when not impeded or restricted by statute or constitutional provision, that it is due at least for partly prospective[8] growth or adjustment, in and by the third branch, according to the facts as well as the hardships of cases that are brought before that branch for scrutiny. Here though the Court is called upon to appraise the pleading of a right of action which, if it exists at all, came into existence by the effect of a statute. That statute provided the right of action upon conditions imposed therein.

---

[8] The expression "partly prospective" is studiously advertent. See T. M. KAVANAGH, J., writing for the Court in *Parker* v. *Port Huron Hospital,* 361 Mich 1 at 26–28, and O'HARA, J., writing for himself and T. M. KAVANAGH, C. J., in *Myers* v. *Genesee County Auditor,* 375 Mich 1 at 11.

The judicial branch has no right, except by the unconstitutional exercise of raw power, to amend it in favor of any person or class of persons. The statute as it stands bars this action, there being no allegation of performance of the condition said section 8 of chapter 22 imposes and no allegation of a constitutional question.

*Second:* It does not matter that some here "cannot attribute to the legislature an intent" to do what that body by its written word actually did. Such personal testimony has always been regarded as both inadmissible and weightless. And if testimony of that kind, no matter by whom given in derogation of the wording of a statute, is now to be made admissible generally, it should be barred in today's instance as being matter within the better knowledge of all knowledgeable and now deceased persons, referring to the Michigan legislators of 1915. It is *their* view of need and purpose, not that of any member of this Court not "there" at the time, which is supposed to count when we are called upon to apply a venerable enactment (*Husted* v. *Consumers Power Co.*, 376 Mich 41, 54). That body of legislators had before it this Court's decision in the *Davidson Case,* a decision which by its succinct final paragraph stood forth as authorizing a statutory provision requiring timely written notice by or on behalf of *all* persons alleged as having rights under the act then to be amended. Too, that body presumably had before it, for acceptance or rejection, the kind of exemptive statute disclosed by the cited Massachusetts and North Dakota cases. It chose not to exempt. The choice thus made should be sustained as against this appeal for judicial insertion, in the 1915 amendment, of a retroactively effective "excuse."

My vote to affirm is reiterated.

O'HARA, J. (*concurring in affirmance*).   I concur in Mr. Justice BLACK's result on the ground that the right of action here asserted is statutory,* and to accrue it must possess all the statutory elements. Notice is an essential element.   That this requirement in this case brings about a harsh result I regret, but this does not alter my judicial duty as I conceive it.

T. M. KAVANAGH, C. J., and KELLY and ADAMS, JJ., concurred with O'HARA, J.

SOURIS, J. (*dissenting*).   Rachel Trbovich, her guardian's complaint tells us, tripped and fell over an elevated slab of defendant city's sidewalk and thereby developed cardiac decompensation, a cerebral arteriosclerotic condition, became completely disoriented and subsequently was adjudged mentally incompetent.   This action, brought in her behalf by her duly appointed guardian,[1] seeks damages from the defendant city for her injuries.   An accelerated judgment in favor of defendant city was entered by the circuit judge on defendant's motion before answer to the complaint was filed.   GCR 1963, 116.

The statutory section under which this action was brought read[2] as follows:

"Sec. 8.   In the event damages are sustained by any person, either by bodily injuries or to his property, because of the defective condition of any highway, street, bridge, sidewalk, crosswalk or culvert in any city or incorporated village of this State where written notice of such inquiry [injury] and defect is now required by law to be served upon such

---

* See CL 1948, §§ 242.1–242.8, as amended by PA 1951, No 19 (Stat Ann 1958 Rev §§ 9.591–9.598).—REPORTER.

1 CL 1948, § 703.1 (Stat Ann 1962 Rev § 27.3178[201]).

2 See, currently, PA 1964, No 170, § 4 (CL 1948, § 691.1404, Stat Ann 1965 Cum Supp § 3.996[104]).

village or city before recovery can be had, it will be necessary to show that such person did serve written notice upon said city or village within 60 days from the time of the happening of such injury. Said notice may be served upon any member of the common council, city or village clerk, board of public works, street commissioner, marshal or other city or village officer, except policeman or fireman. The notice will specify the location and nature of said defect, the injury sustained, and the names of the witnesses known at the time by claimant. If required by the common council or committee thereof, said claimant shall produce his witnesses before said common council or committee, and they may be sworn and examined as to the nature of the claim, the amount thereof, and the extent of the injury. The common council or committee shall have power to subpoena witnesses for such hearing. No other or further notice shall be required. The intent and purpose of the provisions of this chapter are to make the law of liability on the part of townships, villages and cities for injuries sustained by persons because of the defective condition of the highways and the procedure in giving notice thereof, uniform throughout the State, and to repeal all laws or acts of the legislature be the same general, local or special which are inconsistent with or contravening the provisions herein. All actions in court under this act must be brought within 2 years from the time said injury was sustained." CL 1948, § 242.8 (Stat Ann 1958 Rev § 9.598).

Mr. Justice Black makes two arguments for affirmance of the accelerated judgment. First, that the quoted statutory language requires, without exception, that notice be given to the city within 60 days of an injury, and second, that earlier cases of this Court are adversely dispositive of plaintiffs' contentions. We shall consider these arguments in reverse order.

I.

"It has often been said by this and other courts that the language of a decision must be construed with reference to and confined to the facts of that case." *Wolcott* v. *Holcomb* (1893), 97 Mich 361, 368 (23 LRA 215).

Let us consider, then, the facts and issues involved in the cases relied upon by my Brother BLACK, and compare them with this case of Trbovich. In *Boike* v. *City of Flint* (1965), 374 Mich 462, plaintiff adult argued that the 60-day notice requirement of the statute did not apply in an action for bodily injury based upon nuisance rather than negligence. This Court's affirmance of the trial court's dismissal of plaintiff's suit rejected that theory. We said (p 464):

"Section 8 of the act, if not complied with timewise [sic] by the injured person, eliminates that person's right of action as provided by section 1 thereof. The same section also abrogates the common-law liability of the city for or on account of bodily injuries sustained by any person by reason of neglect to keep in repair, et cetera. In the absence of a legally recognized waiver of the required written notice, there is nothing left for the tardy injured person, infant or otherwise. See, as to infants, *Davidson* v. *City of Muskegon,* 111 Mich 454."

Two things should be noted about this passage. First, it recognizes that the requirement of notice may be "waived", that is, may not be necessary, in certain circumstances, although nowhere in the statute is such a principle recognized. Indeed, as Justice BLACK now notes, section 5 of the statute "pointedly declares that 'No township, village or city in this State shall be liable in damages, or otherwise,' to any person or persons for bodily injury sustained upon any of the ways of such township,

village or city 'except under and according to the
provisions of this act.'" The notice provisions being
designed to protect the public, see *Holtham* v. *City
of Detroit* (1904), 136 Mich 17, how can they be
waived, absent express legislative permission?
*Rottschafer* v. *City of East Grand Rapids* (1955),
342 Mich 43, 52 (52 ALR2d 960). If anything, then,
the *Boike Case,* or at least its dictum, strengthens
the position of Mrs. Trbovich, since it recognizes
(notwithstanding absence of statutory support
thereof) a principle which earlier cases apparently
did not, namely, that in certain instances notice may
not be necessary.

Second, *Boike's* dictum that absent notice, "there
is nothing left for the tardy injured person, infant
or otherwise" is completely unsupported by author-
ity with regard to "otherwise", and, as to infants, is
supported only by authority, the *Davidson Case,*
factually distinguishable from the instant case, as
will be seen, *infra.*

It cannot, then, be argued that *Boike* stands as
controlling authority for the proposition that one
rendered unable to give notice by defendant's negli-
gence is thereby precluded from seeking relief after
the 60-day notice period has expired.

Nor is the case of *Davidson* v. *City of Muskegon*
(1897), 111 Mich 454, authority for that proposition.
There plaintiff sued for injuries received on August
21, 1892. She attained her majority on February 1,
1894, and presented a claim for damages to the city
council on March 15, 1894. The city charter re-
quired that all claims against the city for damages
for negligence be presented within six months after
the claim arose. The Court held that plaintiff's
failure to comply with this requirement barred her
from seeking legal redress, noting that (p 457) "It
is entirely competent for the legislature to enact a

general statute of limitations that would put adults and minors on the same footing with reference to the time in which actions must be brought." Even without passing upon the validity of this questioned[3] thesis, *Davidson* need not be regarded as a controlling precedent in this case of Trbovich. Ida Davidson was within two years of legal maturity when injured. There was no claim made that she was rendered mentally incompetent by her injuries, nor does it appear in the Court's opinion that notice of her injury could not have been given timely to the defendant city by plaintiff's parents or some other adult responsible for her care. In short, on its facts, the *Davidson Case* is far different from that of Mrs. Trbovich who allegedly was rendered mentally incompetent, and thus unable herself or through others to give accurate notice of her injury, because of defendant's negligence.

*Bankers Trust Co. of Detroit* v. *Tatti* (1932), 258 Mich 357, noted by Justice BLACK, is also inapt, involving as it did a claim by the guardian of a minor for death benefits under the workmen's compensation act, which claim was not filed within the six months' limitational period prescribed by the statute. Considering the workmen's compensation law as "contractual in nature", as it was then regarded by the Court, the Court denied the guardian's belated claim because there was no express exception of minor claimants from its limitational provisions. Thus, Justice BLACK has cited no Michigan case which *dictates* a result adverse to Mrs. Trbovich's claim.

Turning to other jurisdictions, we find a number of courts which hold failure to give a required notice

---

[3] See the footnote in *Boike*, 374 Mich 462, 464:
"The constitutionality of section 8, insofar as it applies to infants or others under legal disability, has not as yet been put to test." *In the instant case this issue was not raised below nor in the stated issue on appeal.*

of injury does not bar a claim when the failure
was attributable to an incapacity caused by defend-
ant's negligence. They are noted and summarized
in the margin.[4]

The trenchant comment of Mr. Justice Butler, in
*City and County of Denver* v. *Taylor* (1930), 88 Colo
89, 101 (292 P 594, 598, 72 ALR 833), concerning
the interpretation of statutory provisions barring
a plaintiff from recovery if he fails to give the
notice defendant has rendered him incapable of
giving, is worthy of repetition:

[4] See, for example, *City of Colorado Springs* v. *Colburn* (1938),
102 Colo 483, 486 (81 P2d 397) (failure to meet statutory notice
requirement does not bar plaintiff; "we are inclined to adopt what
we conceive to be the more reasonable and humane rule, also approved
by respectable authority, to the effect that under proper circum-
stances of mental and physical incapacity, giving of notice is
excused, the question as to the sufficiency of the circumstances to
work such excuse properly to be submitted to the jury, as was done
here."); *Forsyth* v. *City of Oswego* (1908), 191 NY 441, 444 (84 NE
392, 123 Am St Rep 605) ("If the plaintiff was, as he claimed,
physically and mentally unable to prepare and present his claim, or
to give directions for its preparation and presentation during the
whole of the three months within which he was required by the
defendant's charter to present it, then he was entitled to a reasonable
additional time in which to comply with the charter in that regard.
This is because the law does not seek to compel that which is im-
possible"); and *City of Tulsa* v. *Wells* (1920), 79 Okla 39, 47 (191
P 186) (cited, with approval, jury instruction that "if you should
find and believe from a fair preponderance of the evidence, that the
plaintiff was of such immature age or that his mental or physical
capacity was so impaired by the alleged injury complained of that
he would not be of such mental or physical capacity to seek to know
his rights or understand them if stated to him or apprehended the
need of searching out or enforcing his legal remedies or if his mental
capacity was such that he would not be reasonably expected to take
any step to ascertain what his rights were, then in such event he
would be excused from giving the notice required by the charter so
long as such mental or physical incapacity existed or until a guardian
was appointed for him"). See, also, *Schulstad* v. *City and County of
San Francisco* (1946), 74 Cal App 2d 105 (168 P2d 68); *City of Wax-
ahachie* v. *Harvey* (Tex Civ App 1953), 255 SW2d 549; *City of
Miami Beach* v. *Alexander* (Fla, 1952), 61 So 2d 917; *Randolph* v.
*City of Springfield* (1923), 302 Mo 33 (257 SW 449, 31 ALR 612);
*Terrell* v. *City of Washington* (1912), 158 NC 281 (73 SE 888); *Mc-
Donald* v. *City of Spring Valley* (1918), 285 Ill 52 (120 NE 476,
2 ALR 1359); *Burkard* v. *City of Dell Rapids* (1955), 76 SD 56
(72 NW2d 308); and *Maier* v. *City of Ketchikan* (Alaska 1965),
403 P2d 34.

"To adopt the strict rule, which we should decline to do, would be equivalent to offering this suggestion to municipalities: If you are negligent on any occasion, see to it that your negligence is sufficiently gross to insure the complete physical and mental disability of the victim; for by doing so, you will avoid the necessity of paying damages, which you would be required to pay if the victim were left in possession of his faculties."

That some jurisdictions adhere to the rigid rule advocated by Justice BLACK is not denied. See Annotation, Infancy or incapacity as affecting notice required as condition of holding municipality or other political subdivision liable for personal injury, 34 ALR2d 725 (1954). Even in those jurisdictions, however, there are some who cannot stomach such a rule. See, for example, the dissent of Mr. Justice Fawcett in *McCollum* v. *City of South Omaha* (1909), 84 Neb 413, 416 (121 NW 438, 439):

"The rule announced in the opinion is supported by the authorities cited. Nevertheless it is barbarous. To illustrate: The statute gives a right of action to anyone who, without fault on his part, is injured by reason of the negligence of a city in not using reasonable care to keep its sidewalks in reasonably safe condition for travel over them. At the same hour A is injured by a sidewalk on Fifth street and B on Tenth street. A has a finger broken. He notifies the city within 20 days, and recovers $100. B has both arms broken, and also suffers a fracture of the skull which renders him unconscious, and he so remains for more than 30 days. He is disabled for life, but he is not permitted to recover. Why not? Because, as a result of the city's negligence, he was so seriously injured that for more than 20 days he was totally unconscious and could not notify the city of its own wrong. Any rule of construction which will result in such flagrant injustice is so contrary to every instinct of humanity

that it ought never to be permitted to disgrace the reports of the court of last resort of any Christian State. It is preposterous to say that the legislature ever intended to give a party a remedy for a wrong and at the same time deprive him of that remedy if he failed to perform some condition subsequent which the wrong of the wrongdoer rendered it impossible for him to perform. 'The law countenances no such wretched ethics. Its command always is to do justice.' "

It should be noted here that most of the cases from other jurisdictions cited above and in the margin involved the assertion of a common-law right of action against a municipality, which action defendant sought to bar by invocation of a statutory requirement that *notice* be given before any such action be commenced. In Trbovich, on the other hand, the right of action was created by statute. See *City of Grand Rapids* v. *Wyman* (1881), 46 Mich 516. This fact would have special significance if plaintiff were seeking to avoid the bar of the two-year limitational period contained in the statute creating the right of action, for this Court has said that when a limitational period for bringing suit is contained in a statute creating the right sought to be enforced, such limitation must be strictly complied with, and the tolling provisions of the general statute of limitations may not be invoked to excuse compliance therewith. See, for example, *Bement* v. *Grand R. & I. R. Co.* (1916), 194 Mich 64 (LRA 1917E, 322), and *Yarger* v. *City of Hastings* (1965), 375 Mich 413. In Trbovich, however, plaintiff did commence suit within two years of the injury as required by the statute, but failed only in giving the statutory 60-day notice. Thus, cases like *Bement* and *Yarger* are not in point while the cases cited from other jurisdictions invoke principles which I am persuaded we should apply to the *notice* re-

quirements of the statutory action brought in Mrs.
Trbovich's behalf.

## II.

Let us consider now Justice BLACK's contention
that the statutory language does not permit except-
ing from the notice requirement of the statute those
rendered incapable by their injury from giving
notice.  The statute, quoted *supra,* is remedial in
nature, since no such remedy for negligently inflicted
injury existed at common law in Michigan, and thus
is entitled to a liberal construction by this Court.
"A remedial statute is designed to correct an exist-
ing law, redress an existing grievance, or introduce
regulations conducive to the public good.   *   *   *
Such statutes are to be liberally construed." *In re
School District No 6, Paris and Wyoming Town-
ships, Kent County* (1938), 284 Mich 132, 144.  In
interpreting statutes we are supposed to be guided
by the intent of the legislature,[5] and, if possible,
we are to interpret the pertinent language in such
way as to avoid manifest absurdity and injustice.

[5] *People, ex rel. Whipple,* v. *Saginaw Circuit Judge* (1873), 26
Mich 342, 344, 345:
"But the primary object of all interpretation or construction of
statutes is, to ascertain the real intention of the legislature; and
no specific or artificial rules of interpretation can be of any value,
which do not contribute to this end.   Legislatures are not grammar
schools, and in this country, at least, it is hardly reasonable to
expect legislative acts to be drawn with strict grammatical or logical
accuracy.   It is quite true, that in ascertaining the meaning of a
statute provision, we are not at liberty to go entirely outside of the
statute and guess at a meaning for which the statute furnishes no
support.
"We must infer the intention from the language used.   By this,
however, I do not mean that we are to consider the meaning of the
particular words only in the abstract, but as applied to the subject
matter and general scope and purpose of the whole act.   And in
making this application, in order to ascertain the real intent, we
may often be required to consider the provision in connection with
other statutes and the common law.   In construing the language
of the present statute, it is proper first to inquire what was the
nature of the evil or inconvenience sought to be remedied by it, and
how this purpose has been carried out, in other particulars as well
as in this."

See *Township of Elba* v. *County of Gratiot* (1939), 287 Mich. 372. There the Court had to construe a statute which provided that "Moneys remaining * * * shall be used to reduce the tax levied for general highway township bonds." The trial court held (p 393):

" 'According to the express terms of the statute which, as we have seen, has been held mandatory, these moneys can be used only "to reduce the tax levied." No such tax has been levied (by the township petitioner) and it follows, therefore, that even though the 1933 statute should be eventually held valid, the township of Elba cannot compel a refund to it until it actually levies the tax for the payment of these bonds upon the tax roll.' "

This Court, however, was more rational (pp 393, 394):

"While such a construction would seem to result if the words of the statute were followed to the exact letter, still we think so strict a reading should not be sanctioned when, as in the instant case, it would serve no good purpose, but instead would obviously lead to strange and unwarranted results which it quite conclusively seems the legislature could not have intended. Such results would have been wholly obviated if the phraseology of the statute had been determined with more care, and if by only the slight change made by the words inclosed in parentheses it had been made to read: 'Moneys remaining * * * shall be used to reduce the tax (which otherwise would be) levied for general highway township bonds.' * * * In ascertaining the true intent and meaning of a statute often allowance must be made for attempted brevity of expression.

" 'Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurd-

ity, hardship or injustice, presumably not intended, a construction may be put upon it which modifies the meaning of the words, and even the structure of the sentence. This is done sometimes by giving an unusual meaning to particular words; sometimes by altering their collocation; or by rejecting them altogether; or by interpolating other words; under the influence, no doubt, of an irresistible conviction * * * that the modifications thus made are mere corrections of careless language, and really give the true intention.' Endlich on Interpretation of Statutes, p 399, § 295."

With the above principles in mind, I cannot attribute to the legislature an intention to create a new remedy for those of our citizens injured by a municipality's negligence but to exclude from its coverage those citizens the municipality's negligence renders incapable of meeting the statutory notice requirement.

In the first place, the language of section 8 of chapter 22 which requires that notice be given is based upon the assumption that the injured party is competent. Thus it provides, "it will be necessary to show that such person did serve written notice upon said city or village within 60 days from the time of the happening of such injury. * * * The notice will specify the location and nature of said defect, the injury sustained, and the names of witnesses *known at the time by claimant.*" (Emphasis added.) How else could this language rationally be construed except that the legislature intended that notice be given by one who at least is able rationally to communicate with another concerning the facts of the injury? In particular, the italicized language indicates that the legislature envisioned a claimant who was at least capable of "knowing" something, which is certainly not the case when

the claimant has been rendered mentally incompetent by the injury.

In the second place, to hold that the legislature intended that one rendered incompetent by defendant's tort from giving notice of defendant's tort within 60 days thereof be barred from the courts even when an action is begun within two years of the injury, is to ascribe to the legislature a manifestly absurd intent, which, as we have seen, *supra,* is not compulsorily required by the statutory language. The act was intended to remedy the situation in which one wronged by a municipality was left without remedy. Surely, then, no rational being will argue that the legislature intended to give this remedy only to those citizens who were not so devastatingly injured by the municipality as to be rendered incapable of giving written notice of the incapacitating injury within 60 days thereof. Yet this is precisely the result which is urged by defendant city.

Finally, an interpretation of the statute which would bar Mrs. Trbovich out of hand from court is inconsonant with the common-law principle which we must presume the legislature has in mind when it enacts statutes, and which we bear in mind as we interpret statutes, namely, that one should not be permitted to profit by his own wrong. *Garwols* v. *Bankers Trust Co.* (1930), 251 Mich 420, 426.

In *Garwols* the question was whether a bastard son who murdered his mother could inherit her property under the statutes of descent and distribution. It could not be doubted that under the statutory language *per se,* the son was entitled to inherit. CL 1915, § 11796, provided, "Every illegitimate child shall be considered as an heir of his mother, and shall inherit her estate, in like manner as if born

in lawful wedlock."[6]   The mother being dead, the son, as an heir, was entitled to inherit.   Nonetheless, the Court concluded that such an interpretation, permitting the son to profit by his wrong, was so unjust, and led to such a manifestly absurd result, that the legislature could not have intended such a result to obtain.   The same may be said of any interpretation of the statutory language in Trbovich which would bar Mrs. Trbovich's claim.

In summary, the case law of this State does not compel us to hold that one incapacitated by a municipality's tort from giving timely statutory notice of that tort is thereby precluded from bringing an action within the two-year limitational period. There is, as well, authority in other jurisdictions which lends support to a contrary conclusion. The language of section 8 itself inferentially supports the conclusion that the legislature intended notice be given *when there was someone capable of giving it,* and that language does not compel us to bar someone's claim who is incapacitated by the alleged injury from giving notice. Since to bar such person would be unjust, in permitting defendant to escape liability because of the very grievousness of the wrong with which it is charged, and, in view of the remedial nature of the statute, such result would be absurd, we hold:   One who fails to give a city or incorporated village notice of an injury allegedly caused by its negligence within 60 days of its occurrence because he was rendered mentally incompetent to do so as a result of the injury, but does give notice when he is able, and within the two-year limitational period of the statute, is not automatically barred from bringing suit within the two-year period. Rather, the trier of fact should pass upon the issue of the cause of failure to give timely no-

---

[6] See, currently, CL 1948, § 702.81 (Stat Ann 1962 Rev § 27.3178 [151]).

tice, and if it be resolved favorably to plaintiff, failure to comply strictly with the notice requirement will not be fatal to his suit.

One other point must be considered. Mrs. Trbovich was injured on the sidewalk in front of 8823 Birwood avenue, Detroit, on June 8, 1962. After her injury, she was driven to her home by a stranger, Mr. Charles Strehl, who resided at 8323 Wisconsin, Detroit. From her home she was taken to a hospital. On June 13, 1962, plaintiff's son-in-law, John Dunwoodie, filed a complaint with the Detroit police department, in which the site of the injury was given as 8323 Wisconsin, that is, in front of the Strehl residence. Mr. Strehl and his family left Detroit the very day of the accident and did not return until sometime in 1963. Six months after the accident, on December 5, 1962, the Wayne county probate court appointed Nicholas Trbovich guardian of Mrs. Trbovich. By letter dated January 29, 1963, plaintiffs' attorneys informed defendant's corporation counsel of the injury, giving, by reference to the police department report of John Dunwoodie's complaint, its place of occurrence as the sidewalk in front of 8323 Wisconsin, Mr. Strehl's residence. Upon denial of Mrs. Trbovich's claim, complaint was filed in the Wayne county circuit court on July 23, 1963, and in the complaint the place of injury was given as 8823 Birwood, upon information obtained from Mr. Strehl after his return to Detroit.

Thus, assuming that the notice filed January 29, 1963 was timely, since made within 60 days of the appointment of a guardian for Mrs. Trbovich, defendant argues that the variance between the place of injury given in that notice and the place as given in the complaint is fatal. The trial judge did not pass upon this point, nor should we do so at this

stage of the proceeding on the scant record now before us.

Mrs. Trbovich's guardian was appointed December 5, 1962. The January 29, 1963, notice was given to the city within 60 days of his appointment. That notice was defective, in that it erred in defining the place where the injury occurred, but the correct place of injury was given in the complaint filed July 23, 1963. As I view it, this issue must be resolved: If it be found that Mrs. Trbovich was rendered mentally incompetent to give proper notice, was the notice given by her guardian the best that could be given at that time, January 29, 1963? If so, it would suffice, having come within 60 days of his appointment. This, of course, would depend upon the practicability of locating Mr. Strehl. As soon as Mr. Strehl was available as a source of information, correct notice should have been given to the city. Thus, if prior to filing the complaint on July 23, 1963, counsel for plaintiffs had, or should have had, knowledge of the actual locus of the accident, and failed to inform the city thereof, the variance between the notice given on January 29th, and the notice given in the complaint might be fatal to plaintiffs' cause of action. *Overton* v. *City of Detroit* (1954), 339 Mich 650.

This case should be reversed and remanded for further proceedings in accordance with this opinion. Costs to plaintiffs.[7]

SMITH, J., concurred with SOURIS, J.

---

[7] Agreeing with Shaw that "Silence is the most perfect expression of scorn" *(Back to Methuselah. As Far as Thought Can Reach)* and with Jonson that "Calumnies are answered best with silence" *(Volpone,* act 2, scene 1), I have endured my Brother BLACK'S rancorous attacks in his opinions upon my honor, my integrity, and my judgment. I am content to let the public record refute those attacks. But now my Brother has gone too far by insinuating, slyly to be sure, that I am indolent. Surely, the depth of this unmerited wound considered, I will be excused this personal response, unprecedented

for me, to the exculpatory innuendo with which Justice Black opens his latest "Supplemental Opinion":

Although my Brother notes the date upon which the case was assigned to him, November 4, 1965, and the date upon which he served his opinion, January 8, 1966, curiously he neglects to mention other facts equally within his knowledge, namely, the date upon which my opinion was served, February 23, 1966, or the date upon which his "Supplemental Opinion" was served, May 9, 1966, just one day before our last conference day. These eloquent omissions call to mind Dryden's apothegm: "Secret guilt by silence is betrayed". (*The Hind and the Panther,* part 3, line 763.) For those among us unwilling to accept Mr. Dryden's writings as of precedential worth, the pronouncements of another author of somewhat greater notoriety in local legal circles may be examined to find stated the "rule of unfavorable inference against a party" who fails to produce evidence within his control. See *Prudential Insurance Company of America* v. *Cusick* (1963), 369 Mich 269, 285.