GRUBAUGH *v.* CITY OF ST. JOHNS
OPINION OF THE COURT

1. CONSTITUTIONAL LAW—DUE PROCESS—PROPERTY.

The constitutional guarantee that no person shall be deprived of property without due process of law is, in its most fundamental sense, a limitation upon arbitrary power and a guarantee against arbitrary legislation demanding that the law shall not be unreasonable, arbitrary or capricious and that the means selected shall have a real and substantial relation to the object sought to be attained (Const 1963, art 1, § 17).

2. CONSTITUTIONAL LAW—DUE PROCESS—PROPERTY—ACTION—VESTED RIGHT.

The constitutional provision of due process extends to protect that "property" construed to be a vested right and generally an accrued right of action is a vested property right which may not be arbitrarily impinged (Const 1963, art 1, § 17).

3. ACTION — STATUTES — DAMAGES — PERSON — PROPERTY — VESTED RIGHT — WORDS AND PHRASES.

A statutory right of action for damage to person or property, which has accrued, is a vested right and likewise to be protected under the constitutional provision of due process (US Const, Am 14, § 1).

4. STATUTES—HIGHWAYS—STATES—MUNICIPAL CORPORATIONS—NEGLIGENCE—TORTS—WAIVER OF IMMUNITY.

The general highway statute, by waiving immunity from liability, puts the state and its municipalities upon the same legal footing and subject to the same substantive rules which are applied

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 6] 16 Am Jur 2d, Constitutional Law §§ 361, 544.
[2] 16 Am Jur 2d, Constitutional Law § 365.
[3] 16 Am Jur 2d, Constitutional Law § 424 *et seq.*
[4] 39 Am Jur 2d, Highways, Streets, and Bridges § 346.
[7–9] 39 Am Jur 2d, Highways, Streets, and Bridges § 415.

to any controversy involving a negligent tortfeasor (CL 1948, § 242.8).

5. CONSTITUTIONAL LAW—HIGHWAYS—MUNICIPAL CORPORATIONS—NEGLIGENCE—TORTS—DUE PROCESS.

A cause of action under the general highway statute against a city for negligently maintaining a street is entitled under the due process clause to the same protection against arbitrary interference as any other right (Const 1963, art 1, § 17; CL 1948, § 242.8).

6. HIGHWAYS—MUNICIPAL CORPORATIONS—NEGLIGENCE—TORTS.

A cause of action under the general highway statute against a city for negligently maintaining a street was an accrued vested right and, as such, is *pari causa* with traditional proprietary rights and is equally protected from arbitrary interference (CL 1948, § 242.8).

7. STATUTES—LEGISLATIVE POWER—NEGLIGENCE—NOTICE.

The purely capricious and arbitrary exercise of legislative power, whereby a wrongful and highly injurious invasion of rights is sanctioned and the litigant who fails to submit the required notice of claim is stripped of all real remedy, is condemned.

8. CONSTITUTIONAL LAW—HIGHWAYS—NEGLIGENCE—TORTS—MUNICIPAL CORPORATIONS—NOTICE.

The notice provisions of the general highway statute are constitutionally void as depriving a plaintiff rendered mentally or physically incapacitated by the alleged tortious act of a municipal corporation of due process of law (Const 1963, art 1, § 17; CL 1948, § 242.8).

DISSENTING OPINION

T. E. BRENNAN, C. J.

9. NOTICE—INCAPACITY—TIMELY NOTICE—NEGLIGENCE—EQUITY—INJUNCTION.

*The rule that negligently caused incapacity to give notice constitutes a valid excuse for not giving timely notice need not be founded upon constitutional grounds since, under former practice, a bill in equity would have been a proper means to enjoin the defendant from claiming as a defense that timely notice was not given and it should be permissible to allege and show the same factual basis for failure to give notice under modern practice as an appropriate reply to the defense.*

Appeal from Clinton, Michael Carland, J., and from Court of Appeals prior to decision. Submitted January 14, 1970. (No. 7 January Term 1970, Docket No. 52,309.) Decided November 12, 1970.

Complaint by Bruce Grubaugh against the City of St. Johns for injuries sustained as a result of defendant's failure to keep its streets in reasonable repair so that they were reasonably safe and fit for public travel. Complaint dismissed. Plaintiff appealed to the Court of Appeals and applied to the Supreme Court for leave to appeal prior to decision by the Court of Appeals. Leave granted. Reversed and remanded for trial.

*Cicinelli, Mossner, Majoros, Harrigan & Alexander,* for plaintiff.

*Green & Maples,* for defendant.

T. M. KAVANAGH, J. The primary issue raised below and saved for appeal in this cause is whether the 60-day notice requirement of § 8 of chapter 22 of the general highway statute[1] is constitutionally infirm when applied to a plaintiff rendered mentally or physically incapacitated by the alleged tortious act of a state or municipal defendant giving rise to the asserted cause of action. This issue has been alluded to previously by this Court but never presented squarely for decision. (See *Boike* v. *City of Flint* [1965], 374 Mich 462, 464; *Trbovich* v. *City of Detroit* [1966], 378 Mich 79, 88, 99.)

On March 14, 1961, plaintiff, who was then 19 years of age, was a passenger in an automobile being

[1] CL 1948, § 242.8 (Stat Ann 1958 Rev § 9.598); repealed and superseded by PA 1964, No 170 (MCLA § 691.1401 *et seq.* [Stat Ann 1969 Rev § 3.996(101) *et seq.*]).

driven in a northerly direction on Ottawa Street in the City of St. Johns. Ottawa Street ends at Floral Street at a "T" intersection. It is alleged that as plaintiff's driver proceeded towards this intersection, the automobile struck a rut or chuckhole, splashing muddy water across his windshield, thereby obscuring his vision and causing him to lose control of the car and strike a tree located north of Floral Street.

Plaintiff alleges that he, unconscious and in a state of shock, was taken by ambulance to a hospital where he was treated for a fractured jaw and other fractured facial bones, a skull fracture and a brain concussion. It is further alleged that, as a result of this collision, plaintiff was rendered completely and permanently blind in both eyes.

Plaintiff was discharged from the hospital on April 2, 1961, but alleges he continued under the care and treatment of physicians until some time during the latter part of August 1961.

On July 5, 1961, plaintiff filed a nomination of guardian with the Clinton County Probate Court, naming Keith B. Grubaugh as his guardian. Keith Grubaugh, on behalf of plaintiff, filed a notice of claim with defendant city on September 5, 1961.

An amended notice of claim of damages was served upon the defendant on March 5, 1963, and on the eve of the second anniversary of the accident— March 13, 1963—a civil complaint was filed.

Defendant, appearing specially, moved to dismiss the complaint on the ground that plaintiff had failed to serve written notice of claim within 60 days as required by CL 1948, § 242.8 (Stat Ann 1958 Rev § 9.598) and the city charter.

Plaintiff filed an answer to this motion claiming impossibility of compliance with the 60-day notice requirement and alleged in an amendment to his com-

plaint that defendant city had notice of all the facts and circumstances surrounding the accident, since its police department fully investigated the accident on the evening of its occurrence and the following day. After oral argument on the motion and upon submitted briefs by all parties, the circuit judge denied defendant's motion, holding that plaintiff's claim that he was incapacitated from giving notice within 60 days was a jury question and that if the jury found the plaintiff was incapacitated, he was excused from the requirement to give notice within the specified period of time.

On November 12, 1964, defendant city filed its appearance, and on February 24, 1965, filed an answer to the plaintiff's complaint. On this latter date defendant also filed a motion for rehearing of the motion to dismiss predicated upon *Boike* v. *City of Flint, supra,* which had been decided 22 days earlier. Plaintiff filed an answer to this motion for rehearing, contending that the notice provisions relied upon by defendant city were unconstitutional as related to minors and other persons under physical, mental, or other disability as being violative of the due process and equal protection guarantees of our state and Federal Constitutions.

On November 6, 1968, the circuit judge rendered an opinion granting defendant's motion to dismiss on the basis of the Supreme Court decisions in *Boike* v. *City of Flint, supra,* and *Trbovich* v. *City of Detroit, supra,* as well as the decision in *Kowalczyk* v. *Bailey* (1965), 1 Mich App 551, *affirmed* (1967), 379 Mich 568, but did not discuss the constitutional questions now present on this appeal. Leave to appeal to this Court was granted prior to decision of the Court of Appeals. GCR 1963, 852.

The basic constitutional question considered herein is whether the statutory requirement of written

notice, as a condition of holding a governmental unit or agency liable for tort, is violative of the concepts of due process and equal protection of the law contained in our state and Federal Constitutions.[2]

In discussing the due process of law question we must consider the nature of its guarantee. The constitutional guarantee that "no person shall * * * be deprived of * * * property, without due process of law"[3] is, in its most fundamental sense, a limitation upon arbitrary power and a guarantee against arbitrary legislation demanding that the law shall not be unreasonable, arbitrary or capricious and that the means selected shall have a real and substantial relation to the object sought to be attained. See, generally, 2 Cooley, Constitutional Limitations (8th ed), p 733.

It is axiomatic that the constitutional provision of due process extends to protect that "property" construed to be a vested right and that generally an accrued right of action is a vested property right which may not be arbitrarily impinged. See 16 Am Jur 2d, Constitutional Law, § 421 *et seq.*

In determining whether a vested right had accrued to plaintiff under the remedial statute here involved, we turn to 2 Cooley, *supra,* where the full dimension of the issue was expressed at p 745:

"Nevertheless, in many cases and many ways remedial legislation may effect the control and disposition of property, and in some cases may change the nature of rights, give remedies where none existed before, and even divest legal titles in favor of substantial equities where the legal and equitable rights do not chance to concur in the same persons.

"The chief restriction upon this class of legislation is, that vested rights must not be disturbed; but

[2] Const 1963, art 1, §§ 2, 17; US Const, Am 14, § 1.
[3] Const 1963, art 1, § 17.

in its application as a shield of protection, *the term
'vested rights' is not used in any narrow or technical
sense, or as importing a power of legal control
merely, but rather as implying a vested interest
which it is right and equitable that the government
should recognize and protect, and of which the in-
dividual could not be deprived arbitrarily without
injustice.* The right to private property is a sacred
right; not, as has been justly said, 'introduced as the
result of princes' edicts, concessions, and charters,
but it was the old fundamental law, springing from
the original frame and constitution of the realm.' "
(Emphasis added.)

The precise issue of the accrual of a vested right
under a remedial statute has been previously ex-
amined by our Court. In *Minty* v. *Board of State
Auditors* (1953), 336 Mich 370, Justice DETHMERS
posed the issue as follows (pp 375, 376):

"Decision must depend upon analysis of the es-
sence of the State's *waiver of sovereign immunity* in
the 1943 act. Did it *impose a liability* on the State
under certain circumstances and *thus create a cause
of action, a right, or* did it amount merely to a *con-
sent to be sued, the affording of a remedy?* If the
latter, it clearly gave rise to no vested right, but
only a privilege which the State could withdraw at
any time even though the withdrawal served to de-
stroy the remedy in relation to causes of action which
had already accrued and to terminate suits thereon
already pending." (Emphasis added.)

Answering the question thus posed, Justice BOYLES,
speaking for the majority of the Court, held that the
statute was not merely a consent by the state to be
sued or a waiver of immunity from the right to sue
the state, but rather a waiver of immunity from lia-
bility and an express assumption of liability by the
state (pp 394, 395):

"Thus the opinion conforms to the conclusion reached by the earlier decisions of the Court, that by *consenting to be sued,* in section 8 of the court of claims act, the State did not thereby waive the right to rely on its sovereign immunity from *liability* as a defense in said suit.

"By section 24 of the 1943 act the State assumed liability for damages arising out of the negligence of State officers or employees which the plaintiff claims was the cause of her injury. That act did not merely provide a forum, or procedure to be followed. It gave rise to a cause of action which had not existed prior to its adoption—a right to recover damages from the State which had not existed prior thereto because of the governmental immunity of the State from responding in damages for such cause of action. The 1945 amendment was not an act which merely deprived plaintiff of the right to sue the State. It is not retroactive. It operated *in futuro.* She still had the right *to sue* the State in the court of claims, under section 8 of the act. Furthermore, plaintiff has a vested right in a cause of action which arose while section 24 of the 1943 act creating that right was in effect. I do not agree that the 1945 amendment merely operated to deprive plaintiff of the right to bring suit against the State in the court of claims. Insofar as her right to recover damages in such suit as against the defense of governmental immunity, she has a vested right in her cause of action which arose at a time when the State had waived the defense of governmental immunity and expressly assumed such liability."

The Court's conclusion in *Minty* and its necessary result was predicated upon the firmly established rule expressed in 1 Lewis' Sutherland Statutory Construction (2d ed), § 284, and repeated by the Court at p 391:

" 'By the weight of authority, a statutory right of action for damage to person or property, which

has accrued, is a vested right and likewise to be protected.'"

The pertinent statute in the instant case has likewise been previously determined by our Court to create an assumption of liability. In *Joslyn* v. *City of Detroit* (1889), 74 Mich 458, the Court stated at p 460:

"This statute was passed in May, 1879. It makes the city not only liable for injuries occurring through neglect to keep the streets in repair, but also for such as occur by reason of the neglect of the city to keep its streets in a condition reasonably safe and fit for travel. The duty is imposed in both cases, and the necessity for it exists in the one case just as much as in the other, and the liability is the same, and it is very manifest that the legislature intended to make it so. It was the object of the Legislature in the passage of this statute to avoid the decisions of this Court, by which, before the passage of the act, the law by construction was made to relieve the municipality from all liability of this kind, and we think the statute should be so construed as to affect the object intended by the Legislature.

"If further evidence of the intention of the Legislature upon this subject is desired, I think it may be found in the act of 1887, pages 345 and 346, when it discarded the narrow limits of the common-law liability entirely, as heretofore held by this Court and some others."

See, also, the more current reaffirmance of this construction by our unanimous Court in *Kowalczyk* v. *Bailey* (1967), 379 Mich 568.

The statute in question, by waiving immunity from liability, puts the state and its municipalities upon the same legal footing and subject to the same substantive rules which are applied to any controversy involving a negligent tortfeasor.

The substantive right to proceed against the governmental tortfeasor, as distinguished from merely procedural requirements, must arise under the same conditions and undiminished by any special exemption as any other comparable cause of action. By way of analogy, the United States Supreme Court, construing the nature and scope of liability created by waiver of immunity under the Federal Tort Claims Act, 28 USCA § 2671 *et seq.*, stated in *Indian Towing Co., Inc.* v. *United States* (1955), 350 US 61 (76 S Ct 122, 100 L Ed 48):

"The broad and just purpose which the statute was designed to effect was to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws. Of course, when dealing with a statute subjecting the Government to liability for potentially great sums of money, this Court must not promote profligacy by careless construction. Neither should it as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it. (Pp 68, 69.)

See, also, *United States* v. *Muniz* (1963), 374 US 150 (83 S Ct 1850, 10 L Ed 2d 805).

Rejecting "the casuistries of municipal liability for torts" as grounded upon the historical doctrine of sovereign immunity (*Indian Towing Co., Inc., supra,* at p 65) and adopting the above construction to our own legislation, we hold that this cause of action is entitled under the due process clause to the same protection against arbitrary interference as any other right.

Under the facts of the instant case, we conclude that the cause of action here pleaded by plaintiff was an accrued vested right and, as such, is *pari causa*

with traditional proprietary rights and is to be equally protected from arbitrary interference.

It is argued in this case that our Court in *Moulter* v. *Grand Rapids* (1908), 155 Mich 165, held (pp 168, 169):

"It being optional with the legislature whether it would confer upon persons injured a right of action therefor or leave them remediless, it could attach to the right conferred any limitations it chose. Whether the limitations imposed are reasonable or unreasonable in such cases are questions for the legislature, and not for the courts."

The logical result of such a rule under that holding, and as advocated by defendant in the instant case, would be to legislatively divest plaintiff, under legal disability as he was during the 60-day period, of a vested right without due process of law.

Under the statute a plaintiff could institute suit on the first or fifty-ninth day after the injury. To take away his cause of action on the sixty-first day because he could not meet the notice provisions of the act would deprive him of a vested right of action without due process of law.

The reasons traditionally advanced for such differential treatment were expressed by our Court in *Pearll* v. *Bay City* (1913), 174 Mich 643, at p 647:

"The purpose of the charter provision is to furnish the municipal authorities promptly with notice that a claim for damages is made, and advise them of the time, place, nature, and result of the alleged accident, and a sufficient statement of the main facts, together with names of witnesses, to direct them to the sources of information that they conveniently may make an investigation."

See, also, *Northrup* v. *City of Jackson* (1935), 273 Mich 20; *Rottschafer* v. *East Grand Rapids* (1955),

342 Mich 43; *Harrington* v. *Battle Creek* (1939), 288 Mich 152; *Meredith* v. *City of Melvindale* (1969), 381 Mich 572.

Even if we assume the above original policy considerations were once valid, today they have lost their validity and ceased to exist due to changed circumstances. In recent years most governmental units and agencies have purchased liability insurance as authorized by statute. MCLA § 691.1409 (Stat Ann 1969 Rev § 3.996[109]). In addition to insurance investigators, they have police departments[4] and full-time attorneys at their disposal to promptly investigate the causes and effects of accidents occurring on streets and highways. As a result these units and agencies are better prepared to investigate and defend negligence suits than are most private tortfeasors to whom no special notice privileges have been granted by the legislature.

In view of the above, we reject and overrule the reasoning under the rule in *Moulter, supra,* and condemn the purely capricious and arbitrary exercise of legislative power whereby a wrongful and highly injurious invasion of rights is sanctioned and the litigant who fails to submit the required notice of claim is stripped of all real remedy.

We hold that the notice provisions of § 8 of chapter 22 of the general highway statute are constitutionally void as depriving claimant of due process of law.

Since we dispose of this case on the basis of this plaintiff's right to due process, we do not discuss the briefed argument that the 60-day notice requirement in every case violates the equal protection

---

[4] We note that a driver involved in an accident resulting in personal injury is legally required to "forthwith report such accident to the nearest or most convenient police station or police officer." MCLA § 257.622 (Stat Ann 1968 Rev § 9.2322).

clauses of the state and Federal Constitutions. Such question will undoubtedly arise in some new case where a fully competent adult is the victim.

The order of the trial court dismissing plaintiff's cause of action is reversed and the cause remanded for trial. Plaintiff shall have costs.

BLACK and T. G. KAVANAGH, JJ., concurred with T. M. KAVANAGH, J.

DETHMERS and ADAMS, JJ., concurred in the result.

T. E. BRENNAN, C. J. I cannot subscribe to the opinion submitted by my Brother.

In my judgment, this case presents but one issue. Does physical incapacity of a claimant caused by municipal negligence in the maintenance of a roadway, excuse the giving of notice of injury within 60 days?

The issue was framed in the following way:

Plaintiff filed a complaint in the circuit court for Clinton County on March 13, 1963, alleging injury on March 14, 1961, due to disrepair of defendant's street.

Defendant filed a motion to dismiss on April 3, 1963, alleging failure to file notice of claim upon the city until September 5, 1961, more than 60 days after the injury.

At the hearing on the motion, the following colloquy took place:

*"Mr. Green:* Well, before that might become necessary do I understand the court to say that because one is injured in an accident he is excused from giving the statutory or charter notice?

*"The Court:* No, that isn't the law.

*"Mr. Green:* It is our position that it is immaterial as to the physical condition of the plaintiff. I be-

lieve that has been stipulated that no notice was given.

"*The Court:* How would you handle a situation like this? He gets into an accident in March of '61, lets say, lets make an illustration. Supposing he gets into an accident and he is rendered unconscious, and is unconscious until he wakes up; and when he wakes up immediately and promptly sees a lawyer, and they file a notice, what do you say about that?

"*Mr. Green:* I say, based upon precedent as laid down by the Court of this state that would not excuse the giving of the requisite notice.

"*The Court:* I am afraid that isn't the law. I think the law is if you are incapable physically of giving the notice that you are excused. Now I don't know."

Briefs were filed. On October 12, 1964, the circuit judge filed his opinion. It stated:

"OPINION

(Filed October 12, 1964)

"On March 14, 1961 the Plaintiff was injured while a passenger in an automobile driven by another. It is Plaintiff's claim that the accident was caused by reason of the failure of the Defendant to maintain its streets in a reasonably safe condition. It is stipulated that at the time of the accident the Plaintiff was an infant of nineteen years, and that no notice of the accident as required by the City Charter or Section 9.598, Michigan Statutes Annotated was served upon the Defendant until September 5, 1961, and that thus at the time of the service of such notice more than sixty (60) days had elapsed since the time of the accident.

"Motion has been made to dismiss because of the failure to comply with the provisions of the City Charter and the statute in regard to this notice.

"It is the claim of the Plaintiff that following the accident, that he was mentally and physically in-

capable of complying with the provisions of the statute and the Charter as to notice.

"Therefore, the question to be determined is whether the failure to give the required notice within the time specified in the Charter and statute is fatal to the Plaintiff's cause of action if, in fact, he was, as a result of the accident, physically and mentally incapable of doing so.

"In support of the motion to dismiss the Defendant cites DAVIDSON v. CITY OF MUSKEGON, 111 Michigan 454. Suffice to say that this case does not lend assistance in answering the specific question here involved. This case only holds that infancy does not toll the running of the statute of limitations, where the legislature has made no provision for such tolling.

"While there is a division of authority as to whether physical and mental incapacity arising as the result of the accident will obviate the necessity of giving the required notice within the imposed time limitation, it seems that those courts which hold that such incapacity will do so are supported by both logic and reason.

"In Section 703, Volume 38, AMERICAN JURISPRUDENCE, on page 406 we find the following:

" 'In some states it is held that a person injured does not lose his right of action by failing to give notice during the statutory period when he was physically or mentally incapacitated from giving it, on the ground that the law does not seek to compel a man to do that which he cannot possible (*sic*) perform, especially when the failure to give the notice within the required time grows out of the very act of negligence which makes the municipal corporation liable, and particularly where the incapacity is caused by the same negligence of the municipal corporation out of which the injury arose. There is considerable authority to the effect that so to construe statutory provisions of the character under consideration as to make them apply to persons who

are mentally and physically incapable of giving the required notice within the period specified would render the statutes unconstitutional, as depriving such persons of due process of law.'

"While Michigan has not directly so held, it appears that our Supreme Court would do so if the question was squarely presented to it. In METHVIN v. CITY OF MONROE, 329 Michigan 426 our Court decided the case on other grounds but made this comment on page 430:

" 'There is no showing that the incorrect statement that there were no witnesses was in anywise brought about by any mental incapacity of plaintiff Methvin and we do not rule upon the effect of mental incapacity as an excuse for noncompliance with the quoted statute.'

"It would seem to me that to rule as contended by the Defendant would in effect be saying, you may escape liability by hurting someone badly enough as to render him incapable of complying with the statute even though your negligence was the cause of such incapacity. Put in another way, the Court would be advising the Defendant that it not only could knock a person down but by virtue of the statute could kick him for falling.

"The Plaintiff alleges complete incapacity to comply with the statute, alleging certain facts to support the first allegation. For the purpose of this motion such facts must be accepted as true. If they are true (which issue must be decided by a jury) they excuse the failure to serve the required notice within the limitations of time imposed by the statute and the Charter.

"The Defendant also raises the question of the statute of limitations under the provisions of Section 9.598, Michigan Statutes Annotated, which provides in part as follows:

" 'All actions in court under this act must be brought within two (2) years from the time said injury was sustained.'

"The accident happened on March 14, 1961. Suit was started March 13, 1963 and service had on the Defendant on the same day. The original action was thus instituted within the above mentioned two-year limitation.

"On April 15, 1963 the Plaintiff filed his first amended complaint, and on May 31, 1963 he filed his second amended complaint. It is asserted by Defendant that Plaintiff in such amended complaints has alleged new causes of action after the running of the statute. An examination of such amendments discloses that no new causes of action have been set forth. Rather they are attempts to anticipate defenses.

"If the Defendant had in its answer asserted the defenses it raises in this motion it would have had to raise them as affirmative defenses. If this had been done, the Plaintiff then would have had a right to reply to such defenses exactly as it has attempted to do through the questioned amendments.

"For the reasons given the motion is denied, and an order denying the same may be prepared and presented to the Court for signature.
"DATED: October 9, 1964.

                        (s)  Michael Carland
                             Circuit Judge."

A motion for rehearing of the motion to dismiss was filed, and in due course, the circuit judge granted the motion, filing the following opinion:

"OPINION

(Filed November 6, 1968)

"In response to a motion of defendant City to dismiss, this Court on October 9, 1964, denied such motion on the grounds that the total incapacity of the plaintiff following the accident excused the plaintiff from complying with the provisions of the City Charter, and Section 9.598, Michigan Statutes An-

notated, within the sixty-day period following the accident, it being conceded the notice thereof was not within such period.

"Shortly after the decision of Boike v. City of Flint, 374 Mich. 462, the defendant, on the basis of this decision, filed a motion to re-hear its previous motion. The last brief was received by the Court on March 17, 1967.

"Since the filing of the motion for re-hearing, we have had the benefit of the decisions in Kowcloyk v. Bailey, 1 Mich. App. 551, and Trbarick (*sic*) v. City of Detroit, 378 Mich. 79.

"From all three opinions it is evident that the failure to file the required notice within sixty days is fatal to the action, no matter the reason for such failure.

"The cause may therefore be dismissed.
"Dated: November 5, 1968"

There has never been any finding of fact in the trial court supporting the conclusion that plaintiff Grubaugh was incapacitated from giving the required notice.

Thus, my Brother's conclusion:

"We hold that the notice provisions of § 8 of chapter 22 of the general highway statute are constitutionally void as depriving claimant of due process of law."

is not premised upon plaintiff's incapacity.

Neither in its reasoning does my Brother's opinion limit its holding to minors or other persons suffering legal, as opposed to physical disability.

As I understand the rationale, it is this:

1. A cause of action against a municipality, though statutory in origin, is a vested right.

2. Plaintiff may not be deprived of a vested right, but by due process of law.

3. The 60-day notice limitation is arbitrary and capricious, since it serves no useful purpose.

4. The arbitrary and capricious extinguishing of plaintiff's remedy for the enforcement of his vested cause of action deprives plaintiff of his property without due process of law.

The rationale applies with equal force to competent adults as to minors or those suffering legal disability or physical incapacity whether caused by the negligence of the City or otherwise.

Such a ruling would constitute a departure from our own precedents and from those of other courts.

We need go no further here than to overrule *Trbovich* v. *City of Detroit* (1966), 378 Mich 79.

In so doing, the rule that negligently caused incapacity to give notice constitutes a valid excuse for not giving timely notice need not be founded upon constitutional grounds.

If, under former practice, a bill in equity would have been a proper means to enjoin the defendant from claiming as a defense that timely notice was not given* then it should be permissible to allege and show the same factual basis for failure to give notice under modern practice as an appropriate reply to the defense.

KELLY, J., did not sit in this case.

---

* *Klass* v. *City of Detroit* (1901), 129 Mich 35, 39.