CAVANAGH, J.
(dissenting). Today this Court overrules a portion of our governmental immunity law that has been in place for over 30 years. Because I am not convinced that Hobbs v Dep’t of State Hwys, 398 Mich 90; 247 NW2d 754 (1976), and Brown v Manistee Co Rd Comm, 452 Mich 354; 550 NW2d 215 (1996), were wrongly decided, I dissent from the majority’s decision *271 to overrule these cases. I believe that the principles of stare decisis mandate that we continue to interpret MCL 691.1404(1) in accordance with Hobbs and Brown.
HOBBS AND BROWN SHOULD BE REAFFIRMED
It is well established that overruling precedent must be undertaken with caution. This Court does not lightly overrule settled decisions construing any section of a standing statute. Smith v Lawrence Baking Co, 370 Mich 169, 177; 121 NW2d 684 (1963). Adhering to decided cases is generally “ ‘the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.’ ” Robinson v Detroit, 462 Mich 439, 463; 613 NW2d 307 (2000), quoting Hohn v United States, 524 US 236, 251; 118 S Ct 1969; 141 L Ed 2d 242 (1998). Before this Court overrules a decision deliberately made, it should he convinced not merely that the case was wrongly decided, but also that overruling it will result in less injury than in following it. McEvoy v Sault Ste Marie, 136 Mich 172, 178; 98 NW 1006 (1904).
Before overruling established precedent, this Court must decide whether: “(1) the earlier case was wrongly decided, (2) the earlier case defies practical workability, (3) reliance interests would work an undue hardship if the earlier case was overruled, and (4) changes in the law or facts no longer justify the earlier decision.” Robinson v Detroit, 462 Mich 439, 464-465; 613 NW2d 307 (2000). Under Robinson, the first conclusion this Court must reach before overruling precedent is that the earlier case was wrongly decided. A majority of this Court considered this very issue 11 years ago and concluded that Hobbs was not wrongly decided. Brown, *272 supra at 366. I continue to agree with the conclusion reached in Brown. These cases are part of a 30-year-old line of decisions. The line of cases preceding Hobbs and Brown provide the proper context in which to evaluate them.
The cases leading up to Hobbs and Brown represent thoughtfully made, deliberate decisions. I disagree with the majority’s implication that before 1970, the constitutionality of notice provisions was firmly established. Ante at 206. According to the majority, Grubaugh v City of St Johns, 384 Mich 165; 180 NW2d 778 (1970), represented an “abrupt departure” in finding that a 60-day notice provision violated due process where a plaintiff had been incapacitated during the notice period because of the allegedly tortious conduct of the defendant. Ante at 206; 384 Mich at 175-176. In fact, Grubaugh afforded us the first opportunity to consider the constitutionality of the notice provision — this issue had not been squarely presented in previous cases. Id. at 167. Two cases that closely preceded Grubaugh, Boike v City of Flint, 374 Mich 462; 132 NW2d 658 (1965), and Trbovich v Detroit, 378 Mich 79; 142 NW2d 696 (1966), make clear that their decisions to enforce the notice provisions as written were not constitutionally based. “The constitutionality of section 8, [which is the provision requiring that notice of injury be given to a city within 60 days,] insofar as it applies to infants or others under legal disability, has not as yet been put to test.” Boike, supra at 464 n*. Similarly, Justice Black’s supplemental opinion in Trbovich remarked that the Court was bound to apply plainly written notice statutes as written, given that no constitutional question had been raised below. Trbovich, supra at 88.
It is disingenuous for the majority to characterize Grubaugh as an aberration, while implying that the *273 previous decisions of this Court had endorsed the constitutionality of the notice statutes with an “implicit” rational basis review. Ante at 205. This Court does not ordinarily rule on the constitutionality of a statute if the question of its constitutionality was not raised in the lower court or this Court. Ridenour v Bay Co, 366 Mich 225, 243; 114 NW2d 172 (1962). The question presented in Moulter v Grand Rapids, 155 Mich 165; 118 NW 919 (1908), was one of statutory construction, not constitutionality; while the appealing party claimed that the notice provision was unreasonable and void, we disclaimed any authority to decide the statute’s reasonableness. Id. at 169. If we had actually engaged in a rational basis review of the notice statute in Moulter, the reasonableness of the statute would have been a fundamental part of the inquiry. The test to determine whether legislation enacted pursuant to the police power comports with due process is whether the legislation bears a reasonable relation to a permissible legislative objective. Shavers v Attorney General, 402 Mich 554, 612; 267 NW2d 72 (1978).
Unlike Moulter and its successors, Grubaugh undertook a thorough constitutional analysis of the notice requirements of the general highway statute.[1] This Court concluded that the notice provision of the general highway statute violated due process where it extinguished the claim of a plaintiff who was mentally or physically incapacitated during the notice period due to the alleged tortious act of a state or municipal defendant. Grubaugh, supra at 176. Because the case was disposed of on due process grounds, the equal protection argument was not examined. Id. at 176-177.
*274 Shortly after Grubaugh, we considered a broader constitutional challenge to a 60-day notice provision of the general highway statute[2] in Reich v State Hwy Dep’t, 386 Mich 617; 194 NW2d 700 (1972). This Court followed Grubaugh in holding that the statute violated due process as applied to minors. Reich, supra at 622. As for the remaining plaintiffs, who were presumably competent adults, we held that the notice provision violated equal protection because it arbitrarily and unreasonably split victims into two differently treated subclasses: victims of governmental negligence and victims of private negligence. Id. at 623.
This Court subsequently held that notice requirements are not necessarily unconstitutional if there is a legitimate purpose and the period is not unreasonably short. Carver v McKernan, 390 Mich 96, 100; 211 NW2d 24 (1973). The reasonableness of a period depends in part on the purpose served by the notice requirement. Id. We noted that failure to give notice may result in prejudice to the government relating to the purpose served by the notice provision. Id. Thus, the government is required to show prejudice before a claim can be dismissed on the basis of failure to meet the notice requirement. Id.
We should be mindful of this history when considering the Hobbs and Brown decisions. When this Court addressed the 120-day notice requirement of MCL 691.1404 in Hobbs, we examined the notice provision and the reasons justifying it in light of the Grubaugh, Reich, and Carver decisions. This Court deliberately concluded that actual prejudice to the state from lack of notice within 120 days was the only legitimate purpose it could posit for the notice provision of § 1404. Hobbs, supra at 96. Accordingly, unless actual prejudice is *275 shown, the plaintiffs claim is not barred by failure to give notice within the required period. Id. In Brown, we invalidated a statute on equal protection grounds because it imposed a 60-day notice requirement for claims involving county road commissions when MCL 691.1404, providing a 120-day notice period, also potentially governed the claim. Brown, supra at 363-364. After deciding that the 120-day period of § 1404 applied, we reaffirmed Hobbs’s interpretation of that provision. Id. at 368.
The majority contends that the notion that notice provisions are or may be unconstitutional has “no claim to being defensible constitutional theory.” Ante at 210. But it is this Court’s role to construe statutes to avoid unconstitutionality, if possible, by a reasonable construction of the statutory language. United States v Harriss, 347 US 612, 618; 74 S Ct 808; 98 L Ed 989 (1954). The validity of the Hobbs and Brown decisions must be evaluated in view of our earlier constitutional rulings in Grubaugh, Reich, and Carver. With due consideration of this Court’s precedent in the area of government notice provisions, the Hobbs Court made a reasoned decision that the 120-day notice provision might be unconstitutional if dismissal did not serve the posited purpose of avoiding prejudice. Like Hobbs and its predecessors, the primary concern in Brown was the constitutionality of a legislative scheme that draws arbitrary distinctions between litigants.
Michigan is not the only jurisdiction that has invalidated notice provisions on constitutional grounds. While it certainly represents a minority position, decisions in Nevada, Iowa, Minnesota, West Virginia, and Washington have also held governmental immunity notice provisions constitutionally infirm.[3] Still others have enforced notice *276 provisions after “engrafting” exceptions for minority or incapacity to avoid unconstitutionality. In Schumer By and Through Schumer v City of Perryville, 667 SW2d 414, 418 (Mo, 1984), the court noted that it had previously held the application of the notice provision to incapacitated persons unconstitutional; in the case at hand, it extended this rationale to people who were under the legal disability of minority during the notice period. As evidenced by these decisions, these states, as well as Michigan before the instant case, certainly considered the idea that notice provisions may be unconstitutional to be a defensible constitutional theory.
Further, as Justice KELLY discusses at length, the Legislature has acquiesced with our construction of MCL 691.1404 since the Hobbs decision, including our presumption of the statute’s sole purpose. Ante at 258-261. If the Legislature did not agree with our presumption, in the 31 years since Hobbs was decided, it could have easily responded by elaborating on the other governmental interests served by the notice provision. The Hobbs decision did not foreclose the possibility that the notice provision served other legitimate state interests other than prejudice; it merely stated that this Court could only posit one purpose. Hobbs, supra at 96. If the Legislature had responded in any way to our inference, we would have had reason to reevaluate the constitutionality of MCL 691.1404 in light of the Legislature’s action.
THE REMAINING ROBINSON FACTORS SUPPORT UPHOLDING HOBBS AND BROWN
Even if a majority of this Court disagrees with the reasoning of Hobbs and Broum, a mere belief that these *277 cases were wrongly decided is insufficient to justify overruling them. Other considerations must be weighed before departing from precedent. In particular, under Robinson, this Court must also decide whether Hobbs and Brown defy practical workability, whether reliance interests would cause an undue hardship, and whether changes in the law or facts no longer justify Hobbs and Brown. Robinson, supra at 464. A study of these remaining Robinson factors shows that they weigh in favor of upholding Hobbs and Brown.
The rule that the government must show actual prejudice was suffered from lack of notice does not defy practical workability. Indeed, this rule has been followed and enforced for over 30 years. In that span, litigants, attorneys, and courts have been able to apply Hobbs and Brown to the cases before them. Reliance interests of these parties also support upholding these cases. While a plaintiff is unlikely to deliberately withhold notice longer than 120 days for the sheer purpose of using the Hobbs rule, these plaintiffs should not be our only concern. We must also consider the effect of our decision on injured parties who have sought legal counsel to determine whether they have a valid claim. For example, reliance interests are involved when a plaintiff consults with an attorney and initiates a claim more than 120 days after an injury, having been informed by his attorney that the claim may survive if the government has suffered no prejudice from the delay. Similarly, attorneys who have counseled clients that their claims may still be valid have relied on Hobbs and Brown in accepting cases and dispensing advice.
Finally, there have been no changes in the law or factual circumstances that render Hobbs and Brown unjustifiable. The Legislature has not amended § 1404 since 1972. The Hobbs rule has been an established part *278 of the governmental tort liability scheme for over three decades. Brown examined Hobbs and upheld its rule just over ten years ago. Any relevant changes are entirely internal to this Court.
Applying the Robinson factors here shows that the principles of stare decisis outweigh the arguments for overruling Hobbs. “Under the doctrine of stare decisis, principles of law deliberately examined and decided by a court of competent jurisdiction become precedent and should not be lightly departed.” People v Jamieson, 436 Mich 61, 79; 461 NW2d 884 (1990). Absent the rarest circumstances, we should remain faithful to established precedent. Brown, supra at 365. Reaffirming Hobbs and Brown would promote uniformity, certainty, and stability in the law.
TODAY’S DECISION SHOULD APPLY PROSPECTIVELY
Given that Hobbs and Brown have become ingrained in our governmental tort liability scheme, the majority’s decision to overrule these cases should be applied prospectively. While the general rule is that judicial decisions are given complete retroactive effect, decisions that overrule clear and uncontradicted caselaw have been given prospective application. Michigan Ed Employees Mut Ins Co v Morris, 460 Mich 180, 189; 596 NW2d 142 (1999). A more flexible approach is warranted where injustice might result from full retroac-tivity. Gladych v New Family Homes, Inc, 468 Mich 594, 606; 664 NW2d 705 (2003). To determine whether to depart from the general rule of retroactivity, this Court has recognized a threshold question of whether the decision clearly established a new principle of law, in addition to considering several other factors. Pohutski v City of Allen Park, 465 Mich 675, 696; 641 NW2d 219 (2002). These factors include: (1) the purpose to be *279 served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. Id.
Since Hobbs was decided, the law in Michigan has been that claimants may maintain claims against governmental agencies, despite failure to give notice within 120 days, if the agency cannot show that it was prejudiced by the lack of notice. Today’s decision represents a departure from an established rule of law. We have not foreshadowed any change of this particular rule — on the contrary, it was specifically reaffirmed by Brown ten years ago. Further, parties who have relied on Hobbs in pursuing claims against governmental agencies will now find their claims dismissed. Attorneys who have taken clients and developed cases with Hobbs in mind will have lost the time and effort expended, as well as the confidence of their clients. Under these circumstances, prospective application of today’s decision is appropriate.
CONCLUSION
In conclusion, I dissent from the majority’s decision to overrule Hobbs and Brown. I would not disturb these decisions in light of the principles of stare decisis. Further, overruling these cases presents a new rule of law, thus I would apply the majority’s decision prospectively.

 Specifically, Grubaugh concerned a predecessor to MCL 691.1401 et seq.: 1948 CL 242.8, repealed and superseded by 1964 PA 170.

 Reich concerned the notice requirement of 1964 PA 170.

 Turner v Staggs, 89 Nev 230, 234-235; 510 P2d 879 (1973); Miller v Boon Co Hosp, 394 NW2d 776, 781 (Iowa, 1986); Kelly v City of Rochester, 304 Minn 328, 333; 231 NW2d 275 (1975); O’Neil v City of Parkersburg, *276 160 W Va 694, 701-702; 237 SE2d 504 (1977); Hunter v North Mason High School, 85 Wash 2d 810, 818-819; 539 P2d 845 (1975).