# STATE OF MICHIGAN

# COURT OF APPEALS

---

TIM EDWARD BRUGGER II,

        Plaintiff-Appellee,

v

MIDLAND COUNTY BOARD OF ROAD
COMMISSIONERS,

        Defendant-Appellant.

FOR PUBLICATION
May 15, 2018

No.  337394
Midland Circuit Court
LC No.  15-002403-NO

---

Before:  SHAPIRO, P.J., and M. J. KELLY and O'BRIEN, JJ.

O'BRIEN, J. (*dissenting*).

"[T]he general rule is that judicial decisions are to be given complete retroactive effect." *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986).  Because I believe that *Streng v Bd of Mackinac Co Rd Comm'rs*, 315 Mich App 449, 463; 890 NW2d 680 (2016), does not warrant divergence from this general rule, I respectfully dissent.

In addressing this issue, it is necessary to understand the events that led up to the *Streng* decision.  The following summary, although lengthy, is crucial for understanding the effects of *Streng* on our jurisprudence and the reasons why it should be given retrospective application.

Our Supreme Court in *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197; 731 NW2d 41 (2007)—the case that, as will be explained, created the issue that *Streng* resolved— summarized this history as follows:

> As of 1969 . . . the enforceability of notice requirements and the particular notice requirements in governmental immunity cases was well settled and had been enforced for almost a century.  In 1970, however, there was an abrupt departure from these holdings in the Court's decision in *Grubaugh v City of St Johns*, 384 Mich 165; 180 NW2d 778 (1970)[ abrogated by *Rowland*, 477 Mich 197].  In *Grubaugh* the Court discerned an unconstitutional due process deprivation if plaintiffs suing governmental defendants had different rules than plaintiffs suing private litigants. . . .
>
>     Two years later, in *Reich v State Hwy Dep't*, 386 Mich 617; 194 NW2d 700 (1972)[ abrogated by *Rowland*, 477 Mich 197], the Court took *Grubaugh* one step further and held that an earlier version of MCL 691.1404, which included a

-1-

60–day notice provision, was unconstitutional, but this time because it violated equal protection guarantees. The analysis again was that the constitution forbids treating those injured by governmental negligence differently from those injured by a private party's negligence. Leaving aside the unusual switch from one section of the constitution to another to justify an adjudication of unconstitutionality, this claim is simply incorrect. Private and public tortfeasors can be treated differently in the fashion they have been treated here by the Legislature. It does not offend the constitution to do so because with economic or social regulation legislation, such as this statute, there can be distinctions made between classes of persons if there is a rational basis to do so. As we explained in *Phillips v Mirac, Inc*, 470 Mich 415, 431-433; 685 NW2d 174 (2004), legislation invariably involves line drawing and social legislation involving line drawing does not violate equal protection guarantees when it has a "rational basis," i.e., as long as it is rationally related to a legitimate governmental purpose. The existence of a rational basis here is clear, as we will discuss more fully, but even the already cited justification, that the road be repaired promptly to prevent further injury, will suffice.

Considering the same point, Justice Brennan in his dissent in *Reich* pithily pointed out the problems with the majority's analysis:

> The legislature has declared governmental immunity from tort liability. The legislature has provided specific exceptions to that standard. The legislature has imposed specific conditions upon the exceptional instances of governmental liability. The legislature has the power to make these laws. This Court far exceeds its proper function when it declares this enactment unfair and unenforceable. [386 Mich at 626.]

The next year, in *Carver vMcKernan*, 390 Mich 96; 211 NW2d 24 (1973)[ abrogated by *Rowland*, 477 Mich 197], the Court retreated from *Grubaugh* and *Reich* and, in a novel ruling, held that application of the six-month notice provision in the Motor Vehicle Accident Claims Act (MVACA), MCL 257.1118, was constitutional, and that the provision was thus enforceable, only where the failure to give notice resulted in prejudice to the party receiving the notice, in that case the Motor Vehicle Accident Claims Fund (MVACF). The reasoning was that while some notice provisions may be constitutionally permitted some may not be, depending on the purpose the notice serves. Thus, if notice served a permissible purpose, such as to prevent prejudice, it passed constitutional muster. But, if it served some other purpose (the Court could not even imagine any other) then the notice required by the statute became an unconstitutional legislative requirement. Thus, the Court concluded that in order to save the statute from being held unconstitutional, it had to allow notice to be given after six months and still be effective unless the governmental agency, there the MVACF, could show prejudice. Whatever a court may do to save a statute from being held to be unconstitutional, it surely cannot engraft an amendment to the statute, as was done in *Carver*. See, e.g., *North Ottawa Community Hosp v Kieft*, 457 Mich 394, 408 n

-2-

14; 578 NW2d 267 (1998). Notwithstanding these problems, they went unnoticed and the rule now was "only upon a showing of prejudice by failure to give such notice, may the claim against the fund be dismissed." *Carver*, 390 Mich at 100.

Returning to the Carver approach in 1976, this Court in [*Hobbs v Michigan State Hwy Dep't*, 398 Mich 90, 96; 247 NW2d 754 (1976), overruled by *Rowland*, 477 Mich 197], held regarding the notice requirement in the defective highway exception to governmental immunity:

> The rationale of *Carver* is equally applicable to cases brought under the governmental liability act. Because actual prejudice to the state due to lack of notice within 120 days is the only legitimate purpose we can posit for this notice provision, absent a showing of such prejudice the notice provision contained in [MCL 691.1404] is not a bar to claims filed pursuant to [MCL 691.1402].

Finally, in 1996, in [*Brown v Manistee Co Rd Comm*, 452 Mich 354; 550 NW2d 215 (1996), overruled by *Rowland*, 477 Mich 197], this Court reassessed the propriety of the *Hobbs* decision and declined to overrule it on the basis of stare decisis and legislative acquiescence. [*Rowland*, 477 Mich at 206-209 (some alterations in original).]

Relevant to the current appeal, this Court in *Crook v Patterson*, 42 Mich App 241, 242; 201 NW2d 676 (1972), held—in a half-page decision that relied exclusively on *Reich*—that MCL 224.21 violated the equal protection clause and was, therefore, unconstitutional and void. In 1996, the Michigan Supreme Court in *Brown* also held that MCL 224.21 was unconstitutional on equal protection grounds, but noted that it was "not the same equal protection issue raised in *Reich*" because "[t]his Court is no longer persuaded that notice requirements are unconstitutional per se." *Brown*, 452 Mich at 361 n 12. Instead, the *Brown* Court held that MCL 224.21 violated equal protection because the 60-day notice provision had no rational basis to "[t]he only purpose . . . for a notice requirement," which was "to prevent prejudice to the government." *Id*. 362-364.

In 2007, the Michigan Supreme Court in *Rowland* corrected this long line of cases that impermissibly engrafted an "actual prejudice" requirement into statutory notice requirements to avoid governmental immunity. In our Supreme Court's words,

> The simple fact is that *Hobbs* and *Brown* were wrong because they were built on an argument that governmental immunity notice statutes are unconstitutional or at least sometimes unconstitutional if the government was not prejudiced. This reasoning has no claim to being defensible constitutional theory and is not rescued by musings to the effect that the justices " 'look askance' " at devices such as notice requirements, *Hobbs*, 398 Mich at 96, quoting *Carver*, 390 Mich at 99, or the pronouncement that other reasons that could supply a rational basis were not to be considered because in the Court's eyes the "only legitimate purpose" of the notice provisions was to protect from "actual prejudice." *Hobbs*, 398 Mich at 96. [*Rowland*, 477 Mich at 210.]

The *Rowland* Court went on to cite a number of purposes for notice provisions, thereby expelling the long-held notion that the only purpose of a notice requirement in governmental immunity cases was to prevent prejudice. The *Rowland* Court concluded that "[t]he notice provision passes constitutional muster" and rejected "the hybrid constitutionality of the sort *Carver*, *Hobbs*, and *Brown* engrafted into our law." *Id*. at 213.

After *Rowland* abrogated *Reich*, *Crook*'s holding that MCL 224.21 violated equal protection was no longer good law. But even before *Rowland*, it is debatable whether *Crook* was good law; *Brown* decided that MCL 224.21 was unconstitutional but expressly rejected reliance on *Reich*—upon which *Crook* was exclusively decided—because our Supreme Court was "no longer persuaded" by those reasons. *Brown*, 452 Mich at 361 n 12. In contrast to *Crook*, *Brown* held that MCL 224.21 violated equal protection because it was not rationally related to "the only purpose" of a notice statute: "to prevent prejudice to the governmental agency." *Id*. 362. *Rowland* expressly overruled *Brown* and its "reading an 'actual prejudice' requirement into" notice statutes. *Rowland*, 477 Mich at 213. *Rowland* also rejected the idea that the sole purpose of a notice statute was to prevent prejudice. See *id*. at 211-213. In so doing, it rejected *Brown*'s reasoning that MCL 224.21 was unconstitutional. See *Brown*, 452 Mich at 362.

It was in this context that this Court, in 2016, addressed *Streng*. As explained, after *Rowland* was decided, the notice requirements in MCL 224.21 were no longer unconstitutional. This created the question of whether the notice requirements in either MCL 224.21 or the GTLA applied to injuries due to a highway defect on county roads. No published opinion addressed this issue until *Streng*, which held that the notice requirements in MCL 224.21 controlled. *Streng*, 315 Mich App at 463.

The question now before us is whether *Streng* should be given retroactive effect. The Michigan Supreme Court in *Pohutski v City of Allen Park*, 465 Mich 675, 696; 641 NW2d 219 (2002), provided guidance for a court faced with a decision of this type:

> This Court adopted from *Linkletter v Walker*, 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965), three factors to be weighed in determining when a decision should not have retroactive application. Those factors are: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. *People v Hampton*, 384 Mich 669, 674; 187 NW2d 404 (1971). In the civil context, a plurality of this Court noted that *Chevron Oil v Huson*, 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971), recognized an additional threshold question whether the decision clearly established a new principle of law. *Riley v Northland Geriatric Center (After Remand)*, 431 Mich 632, 645-646, 433 NW2d 787 (1988) (GRIFFIN, J.).

Guiding this analysis are the principles that prospective-only application is an "extreme measure," *Co of Wayne v Hathcock*, 471 Mich 445, 484 n 98; 684 NW2d 765 (2004), and decisions are generally given retrospective application, *Hyde*, 426 Mich at 240.

Initially, I question the majority's conclusion that *Streng* established new law. *Streng* did not overrule any caselaw, nor did it introduce a novel interpretation of a statute. Instead, it resolved a dispute between two conflicting statutes. The majority is correct that this dispute laid

dormant since this Court's decision in *Crook* in 1972. However, as stated, *Brown*, in 1996, rejected the basis for the *Crook* decision. More pointedly, *Rowland*, in 2007, overruled *Brown* and abrogated *Reich*—on which *Crook* exclusively relied—making the holdings of both *Crook* and *Brown* no longer binding on the interpretation of MCL 224.21.[1] Thus, *Streng* did not clearly establish a new principle of law in 2016; the only new principles of law were established by *Rowland* in 2007, and *Streng* simply resolved the ensuing conflict between two statutes—MCL 224.21 and the GTLA notice provision—in the post-*Rowland* legal landscape.

Further, as observed in *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 587; 702 NW2d 539 (2005), "prospective-only application of our decisions is generally limited to decisions which overrule clear and uncontradicted case law." (Quotation marks and citation omitted). As explained, *Rowland*—not *Streng*—upended over 30 years of caselaw governing notice requirements. *Streng* merely interpreted the pertinent statutes post-*Rowland* and did not, itself, "overrule" any caselaw. Moreover, as a result of *Rowland*, the caselaw governing the applicable notice requirements at the time that *Streng* was decided was not "clear and uncontradicted"; by abrogating the reasoning employed by the relevant cases, *Rowland*, at the very least, "contradicted" the applicable case law.[2]

Even assuming that this Court's resolution of the highly unusual situation faced in *Streng* created new law, I do not believe that the remaining factors weigh in favor of retroactivity. The purpose of the *Streng* holding was to resolve a conflict between two conflicting statutes. The *Streng* Court decided that, of those two statutes, the Legislature intended for the 60-day notice

---

[1] To the extent that *Rowland* did not explicitly overrule *Brown*'s holding that MCL 224.21 was unconstitutional, *Rowland* clearly rejected *Brown*'s reasoning with regard to that issue by explaining that there were numerous reasons, besides preventing prejudice, to find a rational basis for a notice requirement.

[2] Plaintiff's strongest argument that *Streng* created new law is that the *Rowland* Court applied the 120-day notice provision from the GTLA rather than the 60-day notice provision from MCL 224.21. See *Rowland*, 477 Mich at 219. Perhaps this was because, under either standard, the plaintiff's claim in *Rowland* was barred because she served notice 140 days after her injury. *Id.* at 201. But regardless of the Supreme Court's reasoning, as recognized in *Streng*,

> The *Rowland* Court made no mention of MCL 224.21, nor did it discuss the reasoning in *Brown* . . . regarding the notice period. . . . *Rowland* expressed neither approval nor disapproval regarding that choice but simply focused on the lack of statutory language in MCL 691.1404 allowing exceptions to the time limit. [*Streng*, 315 Mich App at 459-460.]

Thus, the *Rowland* decision provides no help to plaintiff because MCL 224.21 "was not discussed by the Supreme Court and implicit conclusions are not binding precedent." *Galea v FCA US LLC*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 334576); slip op at 6; see also *People v Heflin*, 434 Mich 482, 499 n 13; 456 NW2d 10 (1990) (""[J]ust as obiter dictum does not constitute binding precedent, we reject the dissent's contention that 'implicit conclusions' do so.").

requirement in MCL 224.21 to control. This purpose is not served by applying the notice requirements of the GTLA—the statute that the *Streng* Court held that the Legislature did not intend to apply—to control.[3]

With respect to the second factor, I do not believe that it is proper to look back at the entire history of reliance on the GTLA notice provision as the majority does. As discussed, *Rowland* abrogated precedent establishing that MCL 224.21 was unconstitutional, which in turn created the question of whether the notice provisions of MCL 224.21 or the GTLA applied in cases such as the one before us. *Rowland* was decided in 2007, and I believe that the proper inquiry is the extent of reliance on the GTLA notice provision following *Rowland*. Orders by the Supreme Court following *Rowland* did not apply MCL 224.21, see *Mauer v Topping*, 480 Mich 912 (2007); *Leech v Kramer*, 479 Mich 858 (2007); *Ells v Eaton Co Rd Comm*, 480 Mich 902, 903 (2007), but none of those opinions addressed whether MCL 224.21 was applicable. Instead, each case dismissed the plaintiff's claim for failure to file notice within 120 days. Therefore, none of these cases established that a case filed after 60 days but before 120 days of the injury satisfied the applicable notice requirement; the claims would have failed under either the GTLA or MCL 224.21. The majority has not cited a single binding case decided after *Rowland* that allowed a claim noticed after 60 days of the injury but before 120 days to proceed. Therefore, in the relevant post-*Rowland* timeframe, there does not appear to be extensive reliance on the 120-day GTLA notice provision.

The last factor, however, weighs in favor of plaintiff. Plaintiff attempted to comply with what he believed was the proper statute and filed notice within 120 days of his injury. However, plaintiff was injured six years after *Rowland* was released. At that time, MCL 224.21 was again constitutional and, as later decided by *Streng*, applied to claims such as plaintiff's. At the very least, when plaintiff was injured, there was a question of whether the notice requirements in MCL 224.21 or the GTLA applied to his claims. Ultimately, in light of the other factors—and guided by the principles that retrospective application is the general rule and prospective-only application is an extreme measure—I would hold that retrospective application is appropriate in this case.

Lastly, the majority contends that "[t]he role of the government in creating confusion concerning a legal standard weighs strongly against sanctioning a party for acting in good faith based upon the apparent law." In support of this assertion, the majority points to *Bryant v Oakpoint Villa Nursing Ctr*, 471 Mich 411; 684 NW2d 864 (2004). Put simply, *Bryant* is inapplicable to this case; it does not address whether a case should apply retroactively and, as will be explained, neither supports nor contradicts the majority's argument.

At issue in *Bryant* was whether the plaintiff's claims sounded in medical malpractice or ordinary negligence. *Id*. at 414. This determination was significant because if the plaintiff's

---

[3] The majority states that the purpose of *Streng* "was to correct an apparent error in interpreting a provision of the GTLA." I do not believe that *Streng* resolved any error in the interpretation of the GTLA because, both before and after *Streng*, the notice provision of the GTLA has been interpreted to be a 120-day notice requirement.

claims sounded in medical malpractice, then they would have been filed after the statute of limitations had run. *Id*. at 418-419. Our Supreme Court, after significant analysis, concluded that two of the plaintiff's four claims sounded in medical malpractice, and then it addressed "whether [the] plaintiff's medical malpractice claims [were] time-barred." *Id*. at 432. Our Supreme Court stated that, normally, the plaintiff's medical malpractice claims would be time-barred, but the "equities in" the case compelled "a different result." *Id*. The *Bryant* Court explained as follows:

> The distinction between actions sounding in medical malpractice and those sounding in ordinary negligence is one that has troubled the bench and bar in Michigan . . . . Plaintiff's failure to comply with the applicable statute of limitations is the product of an understandable confusion about the legal nature of her claim, rather than a negligent failure to preserve her rights. [*Id*.]

Had the plaintiff proceeded under the correct understanding of her legal claims, her first complaint would have been filed within the medical-malpractice statute of limitations, see *id*. at 418-419, and the Supreme Court ultimately allowed her claims to go forward, *id*. at 432.

Contrary to the majority's reading of *Bryant*, the "understandable confusion" identified in that case had nothing to do with the Legislature or the Judiciary. Rather, *Bryant* was simply recognizing that it is difficult to distinguish a medical malpractice claim from an ordinary negligence claim, and, therefore, the plaintiff's confusion with classifying her claims was understandable. Indeed, the general difficulty of determining whether a claim sounded in medical malpractice or ordinary negligence was on full display in *Bryant*: the first judge at trial decided that the plaintiff's claims sounded in ordinary negligence; after the first judge recused herself, the second judge decided that the plaintiff's claims sounded in medical malpractice; on appeal, two judges on a panel of this Court held that the plaintiff's claims sounded in ordinary negligence, while a dissenting judge believed that the plaintiff's claims sounded in medical malpractice; then, at our Supreme Court, five justices held that two of the plaintiff's four claims sounded in medical malpractice, while two justices dissented and would have held that all of the plaintiff's claims sounded in ordinary negligence. *Bryant* did not ascribe this difficulty—and the resulting "understandable confusion"—to either the courts or the Legislature. Therefore, *Bryant*'s holding simply does not support the majority's contention that the role of the government in creating confusion weighs in favor of prospective-only application.

Because *Bryant* does not support the majority's contention that "the role of the government in creating confusion" supports prospective application, and because the majority does not otherwise support this assertion, I question whether "the role of the government in creating confusion" is a valid consideration for prospective-only application. If it were, it would "strongly" weigh in favor of prospectively applying virtually all cases that deal with the interpretation of an ambiguous statute. When the Legislature enacts an ambiguous statute, it creates confusion in the statute's interpretation, which is ultimately resolved by the courts. Under the majority's reasoning, if a party attempted to comply with an ambiguous statute in good faith but ultimately failed to do so, the well-intentioned-plaintiff's actions would "strongly" weigh in favor of prospective application of the court's interpretation of the ambiguous statute. As such, I do not believe that "[t]he role of government in creating confusion concerning a legal standard" has any application to whether a decision should apply retrospectively.

Turning to the concurring opinion, I disagree that *Streng* rested exclusively "upon the principle of statutory interpretation that between a general and specific statute the more specific statute controls." Rather, *Streng* also interpreted MCL 224.21 and the GTLA *in pari materia*. Specifically, *Streng* pointed to language from MCL 224.21(2) that provides that liability was governed by the GTLA and language from the GTLA that provides the " 'liability, procedure, and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in . . . MCL 224.21.' " *Streng*, 315 Mich App at 463, quoting MCL 691.1402(1) (alteration in original). *Streng* concluded that "[a] close reading of the language of MCL 224.21(2) dictates that only those GTLA provisions of law that deal with 'liability' apply to counties, while under MCL 691.1402(1), procedural and remedial provisions for counties should be those of MCL 224.21." *Id*. at 462-463. Accordingly, *Streng* concluded that the procedural notice requirements in MCL 224.21 controlled.

I also disagree with the concurring opinion's conclusion that *Streng* "could of course have reached the opposite conclusion by following the interpretive principle that a later-adopted statute controls over an earlier-adopted conflicting statute." The current version of MCL 691.1402 became effective March 13, 2012, see 2012 PA 50, which is after MCL 691.1404 became effective. MCL 691.1402(1) contains the language that *Streng* relied upon to conclude that the "procedural and remedial provisions for counties should be those of MCL 224.21" rather than of the GTLA. *Streng*, 315 Mich App at 463. Therefore, if the later-adopted statute controlled, the GTLA's notice requirements were subject to MCL 224.21 for "county roads under the jurisdiction of a county road commission." MCL 691.1402(1).

Further, the concurring opinion misapplies the holding of *Apsey v Mem Hosp*, 477 Mich 120; 730 NW2d 695 (2007). At issue in *Aspey* were two statutes that provided conflicting requirements for notarizing an affidavit of merit in medical-malpractice cases. However, one of the statutes at issue provided that it was "an additional method of proving notarial acts." MCL 565.268. The Supreme Court explained that this

> sentence of MCL 565.268 indicates that the URAA is an additional or alternative method of proving notarial acts. As an "additional" method, the URAA does not replace the prior method. Instead, it is intended to stand as a coequal with it. Because the two methods are alternative and coequal, the URAA does not diminish or invalidate "the recognition accorded to notarial acts by other laws of this state." MCL 565.268. Simply, MCL 600.2102(4) is not invalidated by the URAA. It remains an additional method of attestation of out-of-state affidavits. Because the two methods exist as alternatives, a party may use either to validate an affidavit. [*Apsey*, 477 Mich at 130.]

Clearly, the *Aspey* Court did not conclude "that in passing two statutes designating proper procedure, the Legislature had provided 'alternative method[s]' to accomplish this task," as the concurring opinion in this case asserts. Rather, the *Aspey* Court relied on language from MCL 565.268, which explicitly stated that it was "an alternative method," to conclude that the Legislature intended to provide an alternative method.

In contrast to *Aspey*, there is no language in either MCL 224.21 or the GTLA providing that the statute is "an additional method" of providing notice for purposes of governmental

immunity. Without some indication that the Legislature intended for these statutes to be alternative methods for providing notice, *Aspey* simply has no bearing on whether *Streng* was wrongly decided. See *Mich Ed Ass'n v Secretary of State*, 489 Mich 194, 218; 801 NW2d 35 (2011) ("[N]othing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself.") (quotation marks and citation omitted).[4]

Ultimately, however, any disagreement I have with the concurring opinion will be resolved another day. With regard to the issue before us, because I would apply *Streng* retrospectively, I respectfully dissent to the majority opinion.

/s/ Colleen A. O'Brien

---

[4] Also notable, the concurring opinion of Justice Young in *Aspey*, which the concurring opinion in this case cites to, concurred in result only. Five justices agreed with the majority, and one wrote a dissenting opinion  It is unclear why the concurring opinion in this case takes the position that the reasoning of one justice, which was not adopted by a single other justice, "unmistakably leads to" any conclusion grounded in the jurisprudence of this state.